# Sawyers *v.* Baker.

*Bill in Equity by Purchaser, for Specific Performance.*

1. *Statutes omitted from Code.*—The act approved March 4th, 1876, entitled "An act to allow married women in certain cases to sue in their own names" (Sess. Acts 1875-6, p. 159), having been omitted from the Code of 1876, is not now operative as a statute.

2. *Statutory provisions as to parties, in suits by married women.*—The statute which provides that a married woman "must sue or be sued

[Sawyers v. Baker.]

alone, when the suit relates to her separate estate " (Code, § 2892), applies only to actions at law, and has no reference to suits in equity.

3. *Rules of practice as to parties, in suits by married women.*—The 15th Rule of Chancery Practice, adopted in January, 1877, providing that "all bills and petitions by married women, in reference to their separate estates, shall be exhibited in their own names, if over twenty-one years of age, or relieved of the disabilities of coverture" (Code, p. 163), was intended to carry out the legislative policy indicated by the said act approved March 4th, 1876, since inoperative because omitted from the Code of 1876; and while said rule applies equally to all separate estates, whether statutory or equitable, it extends only to cases in which, prior to its adoption, it was necessary that a married woman should sue by her next friend, and does not apply to cases in which it was necessary or proper that she and her husband should join as co-complainants.

4. *Joinder of husband and wife as plaintiffs.*—As decided in this case on a former appeal (66 Ala. 292), the wife is a proper and necessary party to a bill filed by the husband, seeking the specific performance of a contract for the sale of a tract of land, when it appeared that the purchase-money was paid with funds belonging to the wife's statutory estate, though the title-bond was taken in the name of the husband; and if the evidence establishes the case made by the bill, the title should be vested in the wife by the decree of the court for a specific performance.

5. *Possession as evidence of title, and protection to possessor against subsequent incumbrance.*—The open, notorious, and exclusive possession of land by a purchaser, claiming it as his own, whether in trust or otherwise, is constructive notice to all the world of his title, whether it be legal or equitable; and he is entitled to protection against a mortgage subsequently executed by his vendor, and against any one claiming under such mortgage.

6. *Subrogation of sureties on note for purchase-money, to vendor's lien on land, as against sub-purchaser who has made payment.*—If the sureties on a note given for the purchase-money of land, having paid the balance due on the note, can claim to be subrogated to the vendor's equitable lien on the land, they can not assert that right against a sub-purchaser of a portion of the tract, when the purchase-money paid by the latter has been applied in partial payment of the note on which the sureties were bound.

APPEAL from the Chancery Court of Blount.

Heard before the Hon. THOMAS COBBS.

This case was before this court during the December term, 1880, on appeal by the defendants, Thomas Sawyers and others; and the decree of the chancellor was then reversed, and the cause remanded, because Mrs. Rebecca Baker, the wife of the complainant, was not joined with her husband, Henry Baker, as a complainant in the bill. The original bill was filed on the 5th July, 1879, and sought the specific performance of a contract for the sale of a tract of land, which said Henry Baker had bought from Columbus S. Boone, one of the defendants to the bill, a divestiture of the legal title out of the other defendants claiming under said Boone, and the recovery of the possession. The record on the former appeal showed that the original bill was filed in the name of Henry Baker alone, and the decree of the chancellor was reversed, on the demurrer interposed, because Mrs. Baker was not joined with her husband

[Sawyers v. Baker.]

as a complainant in the bill. As set out in the transcript in this case, the original bill was filed in the names of said Henry Baker and his wife jointly; and an amended bill was also filed in their joint names, under an order of ·the court allowing it, on the 15th September, 1881.

According to the allegations of the bill, original and amended, the tract of land involved in the suit had belonged to one Josiah McCollum, deceased, who was the grandfather of Mrs. Rebecca Baker, and she was one of the distributees of his estate. Said McCollum died in 1871, and letters of administration on his estate were duly granted, on the 18th October, 1871, to said Columbus S. Boone, one of the defendants in this suit. Under an order of the Probate Court, granted on his petition, said administrator sold the lands of the estate, and became himself the purchaser at the price of $1,112.40; "and in some manner unknown to complainants," as the bill alleged, "he executed his promissory note for said sum to the heirs of said estate, or to some of them, with said Thomas Sawyers and John Gamble as his sureties." The sale was reported to the court, and was duly confirmed on the 16th October, 1872. The said Boone took possession of the land under his purchase, and continued in the possession until some time in October, 1875, when he sold a part of the tract, particularly described in the bill, to Henry Baker, the complainant in the original bill; and, according to the allegations of the amended bill, he placed said Baker and wife in possession, under their purchase, in November, 1875. The purchase-money agreed to be paid by Baker, $550, was, according to the allegations of the bill, settled in this way: "At the time your orator purchased said land, and during the time said trade was being consummated, it was agreed by and between your orator and said Boone, that orator should see said H. A. Gillespie" (the administrator de bonis non of McCollum's estate, who had possession of Boone's note for the original purchase-money), "and receipt him for said sum of $550, as the husband and trustee of his said wife, Rebecca Baker, and have said sum of $550 placed as a credit on said Boone's note, or in some way cause said sum to be credited on said note; and in pursuance of said agreement, your orator did receipt said administrator de bonis non for said sum of money, as a part of said Rebecca's share of the estate of her said grandfather, and caused said note to be credited with said sum; and in this way and manner your orator and oratrix made full payment to said Boone for said land so purchased of him, all of which was done by and with the consent and approval of your oratrix, Rebecca Baker."

On the 16th January, 1876, as the allegations of the bill further showed, Boone executed a mortgage on all the lands he

had purchased at his own sale, including the portion which he had sold to Baker as above stated, to said Sawyers and Gamble, to indemnify them against liability as his sureties on the note for the purchase-money; but Baker and his wife were then in possession of the part which they had so purchased. On the 3d January, 1877, a judgment was recovered in the Circuit Court by said H. A. Gillespie, as administrator *de bonis non*, against said Boone, Sawyers and Gamble, for $889.12, being the balance due on Boone's note for the purchase-money, with interest, after deducting the $550 paid or settled by Baker. On the 16th January, 1877, pursuant to an order of the Probate Court, the administrator *de bonis non* executed to Boone a conveyance of the lands bought by him at his sale. After the rendition of said judgment in the Circuit Court, "and in the early part of the year 1877," Sawyers, one of the mortgagees, sold and conveyed the lands to Daniel Sandlin, who was also made a defendant to the bill; and said Sandlin having recovered the possession from the complainants, " by some sort of proceeding instituted in a justice's court in said county," the complainants were dispossessed under that judgment. The complainants claimed and alleged that, at the time Boone executed the said mortgage to Sawyers and Baker, there was no liability resting on them as his sureties; and that being in possession of the land which said Baker had bought, at the time the mortgage was executed, and having paid the purchase-money, they had acquired a perfect equity, and were entitled to protection against any claim or title asserted by the defendants.

A demurrer to the amended bill was filed by Sawyers and Sandlin jointly, on the following (with other) grounds: 1st, that there was a misjoinder of complainants, because Baker had no interest in the suit, and his wife should have sued alone; 2d, " that said Sawyers and Gamble, as sureties on the note of said Boone given for the purchase-money, had the right, upon the rendition of judgment against them thereon, and the payment thereof by them, to assert and enforce a vendor's lien on said land for the amount so paid, with interest and costs, and the purchase of said lands by complainants was made (if at all) with full knowledge of all the facts, and of such right in said sureties, or either of them." The chancellor overruled the demurrer, and his decree thereon is now assigned as error.

GEO. H. PARKER, and HAMILL & DICKINSON, for appellant, cited the 15th Rule of Chancery Practice (Code, p. 163); *Baines v. Barnes*, 64 Ala. 375; *Knight v. Blunton's Heirs*, 51 Ala. 333; *Knighton v. Curry*, 62 Ala. 404; 1 Story's Equity, § 499*a*.

[Sawyers v. Baker.]

JOHN W. INZER, *contra.*

SOMERVILLE, J.—The 15th Rule of Chancery Practice (Code, 1876, p. 163) provides, that "all bills and petitions filed by married women *in reference to their separate estate,* if over twenty-one years of age, or relieved of the disabilities of coverture, shall be exhibited *in their own names;* in all other cases, *by next friend.*" This rule was adopted by this court in January, 1877, and was designed to carry out the legislative policy, as indicated by the act of March 4, 1876, entitled "An act to allow married women, in certain cases, to sue in their own names." It was there enacted, that married women, over twenty-one years of age, might sue in their own names, in all cases in which they were previously "required to sue by or in the name of a *next friend.*" Though the act itself seems to have been omitted by oversight from the present Code, and, therefore, has no binding force, it serves to illustrate the design of the rule suggested by it. Its purpose, very clearly, was to abolish the former rule, which required married women to sue by their next friend, in all cases, in courts of chancery, where the suit related to their separate property. It is too obvious for argument that it has no reference to the question of the wife's joinder, or non-joinder with her husband, as co-complainant, but leaves this to be settled by the established rules of equity pleadings.—1 Dan. Ch. Pr. 109*. And we apprehend that no doubt can exist, that it is applicable alike to separate estates of both kinds, statutory and equitable.

The case, in our opinion, presents no improper joinder of parties plaintiff. The suit, as originally instituted, was brought in the name of the appellee, Henry Baker, to whom Boone had conveyed the land in controversy. The husband, however, having purchased the land with the wife's property (being a part of her statutory separate estate), and having taken the conveyance from Boone in his own name, was a mere *trustee* for her; and it was ruled by this court, when this case was here before on appeal, that the wife, as *cestui que trust,* was a necessary party to the suit.—*Sawyers v. Baker,* 66 Ala. 292. We then said: "If she freely assented to the purposes of the bill, she was a proper party complainant; otherwise, she should have been made a defendant."—*Ib.* 295. The bill was afterwards amended, so as to make her a co-complainant with her husband; and it is now insisted that this is a misjoinder of parties.

The question is unaffected by the statute; section 2892 of the Code (1876), requiring the wife to sue alone when the suit relates to her separate estate, plainly having reference to suits at law alone, and being inapplicable to suits in equity. The doctrine as to parties is essentially different in courts of law,

[Sawyers v. Baker.]

and in courts of equity; and it is often a matter of no grave concern, in some cases, whether a given party is complainant or defendant.—Story's Eq. Plead., § 76. Where, however, the husband has no adverse interest to his wife, and neither seeks any relief against the other, both being necessary parties to a suit instituted to enforce some legal right of the wife in a court of equity, the rule is, that they may unite as co-complainants.—1 Dan. Ch. Prac. 109;* *Bein v. Heath*, 6 How. (U. S.) 228; Story's Eq. Plead., § 61-62; *Booth v. Albertson*,. 2 Barb. Ch. 313.

In *Pitts v. Powledge*, a bill was filed by the husband alone, to enforce a vendor's lien for the unpaid purchase-money, evidenced by a promissory note made payable to him. The wife was allowed to be made a co-complainant, by amended bill, alleging that the land belonged to her statutory separate estate. That case and the present are essentially the same in principle, and we can see no error in the action of the chancellor allowing· the amendment, to which objection is taken by demurrer.

We make yet another suggestion, corroborative of the correctness of the foregoing views. The husband here holds a deed to property, as a mere *trustee* for the wife. She is the beneficiary, or real owner in equity, and seeks relief, to which the husband consents. It is the duty of the court to protect the trust, by decreeing that the title be made to *her*, if to any one. In this view, she is certainly a proper, if not a necessary party plaintiff with the husband.

It is further insisted by the appellants, that their equity in the lands purchased by Baker is superior to Mrs. Baker's. In *Sawyers v. Baker* (66 Ala. 292, 296), *supra*, we held that, although Baker was the purchaser of a mere equitable title from Boone, still his *possession* of the land was a fact which charged all subsequent purchasers with notice, and was equivalent to registration of his deed, which was unrecorded. And he having paid the purchase-money, before the mortgage on the same· land was executed by Boone to Sawyers and Gamble, his equity was held to be superior to that acquired by them through their mortgage. This conclusion was based on the principle, now well settled in this State, that the open, notorious and exclusive· possession of real estate, by a vendee holding under an unrecorded deed, and claiming the land as his own, whether in trust or otherwise, is constructive notice of the vendee's title,. whether legal or equitable in its nature.—*McCarthy v. Nicrosi*, at present term. We are satisfied with the conclusion then reached, without adding more.—*Hendricks v. Kelly*, 64 Ala. 388; Wade on Notice, § 273; *Ludlow v. Gill*, 1 Amer. Dec. 294, *note ; Burt v. Cassety*, 12 Ala. 734.

But it is contended, that as Sawyers and Gamble, the appel-

[Buchanan v. Buchanan.]

lants, were sureties of Boone on the note given for the
purchase-money, which was a lien on this land in favor of the
vendor, and as they paid the balance due on this note, they are
entitled to be subrogated to the vendor's lien, which is superior
to the equity of the appellees. The authority of *Knighton
v. Curry*, 62 Ala. 404, is cited in support of this view. Con-
ceding that this case limits, if it does not modify, the old doc-
trine declared on this subject in *Foster v. Trustees of Athe-
næum* (3 Ala. 302), and that a surety can, in such cases, work
out the equity of subrogation, there is one important feature
in the case at bar, which would utterly defeat its assertion as
against the appellees. The sureties were certainly liable for
*the whole* of the purchase-money, due on the land purchased by
their principal, Boone. This amounted to more than eleven
hundred dollars, and was evidenced by the joint and several
note of Boone and these sureties, Sawyers and Gamble. When
Baker purchased the land in controversy, which was something
less than half of the original tract, he paid for it the sum of
five hundred and fifty dollars, which *was credited on this note.*
The sureties have, therefore, gotten the full benefit of this
credit once, and can not, in equity or good conscience, be per-
mitted to enjoy it *a second time*, to the detriment of the pur-
chaser. It does not appear that the price paid was inadequate,
or the purchase unfair. If this claim is sustained, the sureties
will virtually have been permitted to enforce their alleged
equity *twice against the same land*—once by having the pur-
chase-money paid by Mrs. Baker appropriated to pay about
half of their own debt, and again by enforcing a lien against
it for the other half. No principle of equity jurisprudence is
known to us, by which such an inequitable proceeding can be
justified, or tolerated.

The chancellor was clearly correct in overruling the de-
murrer filed to the bill by the appellants, and his decree is
affirmed.