# Pritchett *v.* Jones.

*Bill in Equity for Settlement of Assignment; Contest between Creditors.*

1. *Fraudulent sale of goods by insolvent debtor; right of purchaser, on payment of judgment, to claim as creditor under deed of assignment.*—A sale of goods by an insolvent debtor having been held fraudulent at the instance of attaching creditors, on the trial of a statutory claim suit instituted by the purchaser, the payment of their judgments by him, which were less than the assessed value of the property, does not subrogate him to their rights as creditors under a deed of assignment executed by the debtor after the sale of the goods, nor give him any other rights as a creditor to participate in the assets in the hands of the assignee, although a part of said assets consists of money paid by him in cash on the purchase of the goods.

APPEAL from the Chancery Court of Wilcox.

Heard before the Hon. THOS. W. COLEMAN.

In the matter of the assignment by John W. McCaskey to Edward N. Jones, as trustee, for the benefit of the creditors of the late firm of McCaskey & Ratcliff, a petition was filed in the said court, on the 22d April, 1886, by the trustee, asking an order requiring creditors to file their claims, and for a partial distribution of the assets among them. Under the order requiring creditors to file their claims, a claim was filed by D. S. Pritchett, which was contested by the assignee and the other creditors, and was disallowed by the chancellor; and the order rejecting it is now assigned as error. The opinion states the facts connected with the claim.

J. N. MILLER, for the appellant, cited *Humes v. Scruggs*, 64 Ala. 40; *McLeod v. Powe*, 76 Ala. 418; Benjamin on Sales, §490, note *r*.

JNO. Y. KILPATRICK, for the creditors, and JONES & JONES, for the assignee, cited *Shealy & Finn v. Edwards*, 75 Ala.

[Pritchett v. Jones.]

412; *Williams v. Higgins*, 69 Ala. 518; *Pickett v. Pipkin*, 64 Ala. 522; *Watts v. Nat. Bank*, 76 Ala. 475; Wait's A. & D., vol. 1, p. 80, § 13; Ib. vol. 5, p. 216, § 21.

CLOPTON, J.—On April 13, 1886, John M. McCaskey, a member of the mercantile firm of McCaskey & Ratcliff, made an assignment to E. N. Jones, for the benefit of the partnership creditors, a list of whose names was appended. On a petition filed by the assignee for a partial distribution, under the order of the Chancery Court, the chancellor directed the register to ascertain and report the creditors who were entitled to share in the distribution, and the amount and character of their respective claims. On the reference, appellant presented and filed claims, which originated under the following circumstances: Prior to the execution of the assignment, appellant purchased from the firm their stock of goods, and some notes and accounts, and paid for them in part with partnership indebtedness, in part with individual notes of the partners, and in part with cash. J. Pollock & Co. and M. P. Levy & Co., who were creditors of the partnership, and whose names were included in the list appended to the assignment, caused attachments to be sued out against McCaskey & Ratcliff, and levied on the goods; to which appellant interposed a claim under the statute. On trial of the right of property, the goods were found subject to the attachments, their value assessed by the jury, and judgment rendered condemning them to the satisfaction of the plaintiffs' demands. On appeal, the judgment in favor of Pollock & Co. was affirmed by this court, on the ground that the conveyance to appellant by McCaskey & Ratcliff was fraudulent as to the partnership creditors.—*Pritchett v. Pollock & Co.*, 82 Ala. 169. After the affirmance, the appellant paid the judgments rendered in the attachment suits, and also the costs of the trial of the right of property. The amounts thus paid constituted the claims presented by him to the register. A portion of the money paid by appellant to McCaskey, on the purchase of the goods, was included in the assignment. The question is, whether, on these facts, appellant is entitled to share with the other creditors in the distribution of the trust fund.

It will be observed that appellant did not file his original demands against the partnership. These seem to have been regarded as extinguished. His claims being founded on the payment of the judgments of the attaching creditors, their

allowance depends on his equity to be subrogated to their right to participate in the distribution of the assigned fund. Subrogation is a mode adopted, in the administration of equity, to reimburse a party who has been compelled to pay a debt, or discharge a liability, which another was, either in law or in equity, primarily bound to pay or discharge, out of any fund to which the creditor could resort in the first instance. The object of the doctrine is, to enforce natural justice in favor of a person who occupies the situation of a surety or guarantor, whether he is nominally or actually such, or merely stands in a position which compels him to pay to protect his own interests. The payment of a debt without a previous request, or an obligation, or under circumstances from which a request may be implied, is insufficient; and if the debt, in contemplation of equity, is extinguished, there remains nothing on which to found the right of subrogation.

The doctrine, though most usually applied in cases of sureties or guarantors strictly, is of liberal and extensive application, and may be generally said to reach all cases in which, the essential conditions existing, its application is necessary to obtain the ends of justice. It is not without qualifications. Being purely of equitable creation, it is controlled by equitable principles and considerations. A material qualification is, that it will not be enforced if the effect is to defeat or prejudice the rights of third persons. The party seeking such relief, must show a superior equity; for the equities being equal, the law will be allowed to take its course.—*Knighton v. Curry*, 62 Ala. 404; *Sawyers v. Baker*, 72 Ala. 49; 2 Lead. Cas. Eq. 285-290; Brandt on Suretyship, § 265.

It is not contended that appellant was a surety, or in any manner bound for the debts of the attaching creditors, before the rendition of the judgments condemning the goods. On his failure to deliver the goods to the sheriff, within thirty days after the rendition of the judgments, and the return of his claim bond forfeited, executions could have been issued against him and his sureties for the amounts of the plaintiffs' judgments, they being less than the assessed value of the property.—Code, 1886, § 3008. Though the conveyance of the goods by McCaskey to appellant was valid as between the parties, being fraudulent, it was void as to the assailing creditors. The judgment of condemnation is conclusive on appellant, that the goods were, as to the creditors, the prop-

[Pritchett v. Jones.]

erty of the attached debtors. It results, so far as the creditors are concerned, that the payment of the judgments in favor of the attaching creditors was payment under compulsion by the judgment of condemnation, and was, to all legal intents and purposes, the payment of a judgment against the appellant himself, with the funds of McCaskey & Ratcliff. At least, the payment of the judgments by appellant was without a previous request, or an obligation, or under circumstances from which a request could be implied, and the judgments were extinguished in law and in equity.

There are cases in which a fraudulent conveyance will be allowed to stand as security for the consideration actually paid. Of this class are conveyances constructively fraudulent, because of inadequacy of consideration, there being no actual fraud, nor participation on the part of the grantee in any fraudulent intent of the grantor—*Caldwell v. King*, 76 Ala. 149. When a conveyance is founded in actual fraud, it will not be permitted to stand for the purpose of reimbursing or indemnifying the grantee. In such case, he is regarded as *particeps criminis*, and will not be allowed to assert, as against creditors, any right founded on such conveyance.—*Gordon v. Tweedy*, 71 Ala. 202. It has been held that a fraudulent purchaser of property can not be reimbursed for prior incumbrances discharged by him. *Wiley, Banks & Co. v. Knight*, 27 Ala. 336. In *Williamson v. Goodwyn*, 9 Gratt. 503, a fraudulent grantee of slaves, who had applied the proceeds of the sale of some of them to the payment of just debts of the grantor, claimed that she should be protected against the other creditors, to the extent of the price of the slaves so applied. It is said: "After the fraud is detected and brought to the light, the fraudulent vendee should not be allowed to compound the fraud by giving up a portion of the property, or its avails, and be exempt from liability for another portion, although that portion may have gone to pay *bona fide* debts." We are at a loss to conceive any sound or just principle on which a grantee can deduce any equity from a conveyance fraudulent in fact, which will be enforced to the prejudice of the creditors of the grantor. "He that hath committed iniquity, shall not have equity." The complicity of appellant in the fraud deprives him of any right or equity of subrogation.

Affirmed.