# Truss, *et al. v.* Miller.

*Bill in Equity for Contribution and the Enforcement of an Equitable Lien.*

1. *Equity pleading; amendment of bill.*—In determining whether a bill as amended is demurrable, in that it makes a new case or essentially departs from the case made by the original bill, the controlling inquiry is, whether the allegations of fact, setting forth the right and title of the complainant and the wrong or liability of the defendant, are changed, and for them other facts substituted from which the right to relief is deduced.

2. *Same; same; case at bar.*—M. and C. jointly purchased a tract of land, executed a joint note for the purchase price and gave a mortgage on the land as security. They subsequently sold an undivided interest in such lands to B., taking his note for the unpaid purchase money, which recited that it was given for the purchase money, and that the vendors reserved a lien for its payment. An execution was issued on a judgment recovered by one T. against B., and was levied upon the latter's undivided interest in said land. At the sale under such execution T. became the purchaser, he having notice of the vendor's lien, and of the existence of the mortgage which had been executed upon said land by B.'s vendors. M. paid the original note executed by him and C. before its maturity, and the note and mortgage were transferred to him. Subsequently M. filed a bill averring the facts above set out, and prayed for an accounting and contribution between him and C., and upon default of payment by C. of the amount ascertained to be due, that the mortgage executed by them be foreclosed, and that T., the purchaser at the execution sale, be declared to be not a *bona fide* purchaser without notice, and that the interest in said land purchased by him be held liable for the amount due on the

VOL. 116.

[Truss, *et al.* v. Miller.]

note executed by B. Afterwards the complainant filed an amended bill, in which he struck out the allegations in the original bill in regard to the purchase of the note executed by him and C. jointly, and averred that before its maturity he purchased and paid for said joint note, thereby extinguishing it, and that he was entitled to contribution from C., as joint maker, C. knowing of and consenting to said purchase. Regarding the purchase by T. as judgment creditor of the interest of B., the same averments were made as in the original bill, except that notice of the mortgage on the part of T. was not alleged. The prayer of the amended bill was for an accounting, for a decree adjusting the respective rights of the parties to the suit, that T., as judgment creditor, be declared not a *bona fide* purchaser, and that the interest in the lands purchased by him be declared subject to the vendor's lien and be sold, unless the promissory note of B. be paid, and that C., as joint maker of the note with the complainant, be held liable for contribution to complainant. *Held:* That the amended bill was properly allowed and was not subject to demurrer as being a departure from the case made by the original bill, since the facts constituting the cause of action, and from which the complainant deduced the right to relief were, in both bills, substantially the same.

3. *Same; multifariousness.*—A bill in equity which asks for contribution from one of two joint makers of a note, secured by mortgage on real estate, and which also asks that the portion of the same land which had been sold to a third person be declared subject to the vendor's lien, and if the purchase price be not paid that the interest in said lands be sold to pay the lien, is not subject to demurrer on the ground of multifariousness.

4. *Subrogation; effect of payment of joint debt before maturity.*—Where one of two joint makers of a note, which is secured by a mortgage, pays the debt before maturity, the effect of such payment is the equitable assignment to him of the mortgage, and he thereby becomes subrogated to the rights of the mortgagee, as against the co-maker, for the latter's *pro rata* and just proportion of the joint debt.

5. *Same; same; right to contribution.*—Where one of two joint makers of a note secured by a mortgage pays the note, the act of the creditor in transferring the note to him and in leaving the mortgage uncancelled upon the record, does no more than preserve the right of him who pays the debt to contribution from his co-maker for the latter's equitable proportion of the joint debt.

6. *Vendor and purchaser; rights of subsequent purchaser as against mortgage to original vendor; estoppel.*—Where, at the time of the purchase of an interest in land by one who gives his note for the purchase price, there is upon record an unsatisfied mortgage given to secure a note executed by such person's vendor to the original vendor for the purchase money, such subsequent purchaser has notice of the lien upon such land, and the execution of a warranty deed by the intermediate vendor to such subsequent purchaser gives him no right in equity to resist the mortgage; and he can assert no right to an es-

[Truss, *et al.* v. Miller.]

toppel against his vendor, arising from the covenants of his warranty deed, as relieving his property from the lien of such mortgage, until he has paid for such warranty by the payment of the purchase money due; and one succeeding to the rights of such subsequent purchaser is barred from asserting such estoppel until the purchase money is paid.

7. *Contribution*; *statute of limitations.*—Where one of two joint makers of a note pays the same before maturity, the statute of limitations does not begin to run against his right of contribution from his co-maker until the maturity of the note; and such demand has no element of an open account, but is subject only to the bar of the statute of limitations of six years.

APPEAL from the Chancery Court of Jefferson.
Heard before the Hon. THOMAS COBBS.
The original bill in this case was filed by the appellee, J. W. Miller, against the appellants, C. C. Truss and P. P. Clarkson, on April 1st, 1893. The averments of the original bill disclosed the following facts: Miller and Clarkson on the 3d day of December, 1886, purchased from one W. H. Williams, each purchasing an undivided one-half interest, certain specifically described land. Not paying all the purchase money in cash, they gave their promissory note to Williams for the balance, to-wit, $1,812.50, bearing same date as of purchase, the 3d day of December, 1886, and payable twelve months after date. This promissory note was secured by a mortgage executed by Miller and Clarkson to Williams on said land, and which was filed for record on the 8th day of December, 1886. Miller, on the 31st day of January, 1887, purchased said note from Williams, paying him for the same a sum of money, which, with interest to day of maturity of said note, amounted to $1,812.50, and said note and mortgage became and were the property of Miller; and Clarkson knew of Miller's said purchase of said note at the time it was made.

On the 23d day of April, 1887, Miller and Clarkson and wives sold and conveyed by deed to one W. J. Bass an undivided one-third interest in said land. Bass not paying all the purchase money in cash, gave his note for the balance—to-wit, $604.17—which note described the land on its face, and in and by which Miller and Clarkson reserved a vendor's lien on said land so purchased by Bass. Bass failed to pay any part of his said note when it fell due, and has never paid any part of it,

[Truss, *et al.* v. Miller.]

and has since died leaving his estate insolvent. After
said sale and conveyance to Bass by Miller and Clarkson,
one Truss recovered a judgment at law against Bass,
had execution issued thereon and placed in the hands of
the sheriff of Jefferson county, which execution the
sheriff levied upon Bass' said interest in said land and
sold the same, as such sheriff, on the 2d Monday in Sep-
tember, 1890 ; and at said sheriff's sale Truss became
the purchaser of Bass's said interest, and the sheriff
made him a deed on the 9th day of September, 1890,
which was duly recorded. Truss was informed, before
his judgment was rendered against Bass, of the existence
of the mortgage to Williams, and of the fact that Bass
had not paid his said note. Truss did not pay out any
money as such purchaser except the costs and expenses
of his suit against Bass, but credited his judgment with
the amount bid by him, less the costs and expenses. On
the 23d day of January, 1888, Clarkson paid Miller
$610.95 on their said note originally due to Williams.
The prayer was for an accounting and contribution be-
tween Miller and Clarkson, and in default of payment
by Clarkson of amount found to be due by him to Miller,
that the Williams' mortgage be foreclosed ; that Truss
be declared not to be *bona fide* purchaser without notice,
and that Bass' interest in said land so purchased by
Truss be held liable for amount due by Bass on his said
note. Truss is required by the foot note to answer un-
der oath. Truss and Clarkson filed, respectively, de-
murrers to the original bill, setting up as a ground of
demurrer that the allegations of the bill showed that the
Williams' mortgage had been paid by Miller who owed
it, and the prayer was to foreclose a mortgage which
had been paid off.

On the 13th day of February, 1894, Miller filed an
amendment to his original bill, in and by which he al-
leged, in regard to the purchase of the Williams' note,
that he purchased the same and paid in cash for said
note on the 31st of January, 1887, the sum of $1,595,
and thereby extinguished said note ; that he was enti-
tled thereby to contribution from Clarkson in the sum of
$906.75, with interest from the 3d of December, 1887,
the date of the maturity of the Williams note, and that
Clarkson knew of and consented to the said purchase of
the Williams note by Miller.

[Truss, *et al.* v. Miller.]

The allegations of the original bill in regard to the purchase of the Williams note were stricken out by the amendment. In the amendment Miller further alleged, in regard to the knowledge of Truss of the vendor's lien held by Miller and Clarkson on the Bass interest, the same that was averred in the original bill, except he struck out by this amendment all allegations concerning notice to Truss of the mortgage due by Miller and Clarkson to Williams, and under which, in the original bill, he sought to hold Truss, thus relying, in so far as Truss is concerned, wholly upon the vendor's lien, and not at all upon the mortgage. The language of section 7 of the amended bill was as follows: "That defendant, Truss, was fully informed of the fact that said Bass had not paid for the interest in said land, which was about to be sold under said execution and levy; and that said defendant, Truss, did not pay out any money for, or on account of said purchase, except the costs and expenses of said suit, but credited the judgment with the amount bid by him for said property, less the costs and expenses paid by him as aforesaid; that Truss was not a *bona fide* purchaser, without notice of said Bass' interest in said property, and purchased with full knowledge that said Bass had not paid for said interest in said property."

In the amended bill the complainant further alleged in regard to contribution from Clarkson, the following in addition to what is alleged in the original bill: That Clarkson is liable to contribution for one-half paid by Miller, with interest from maturity of the note so paid by him, and is not released by the payment of the $610.95; that Clarkson is liable for one-half, with interest of the amount of the Bass note, unless the amount be realized from the sale of the Bass interest in said land.

The prayer of the amended bill is as follows: "That an account be stated to ascertain what is due and owing to complainant by reason of the payment made by him to said W. H. Williams, as is set forth in paragraph 4 of this bill as hereinbefore amended; and that your honor would make a decree thereon ascertaining and adjusting the respective rights and equities of the parties to this suit; and would decree that said defendant, Truss, is not a *bona fide* purchaser for value, without notice of

[Truss, *et al.* v. Miller.]

said Bass' interest in said lands; and decree that the interest bought by said Bass from orator and defendant Clarkson, and which is now claimed by defendant Truss, as and for his own property by virtue of said sheriff's deed as aforesaid, was bought by said Truss subject to the vendor's lien thereon, and is liable for the amount due from said Bass for the unpaid purchase money therefor; and that unless said promissory note be paid off within a time to be fixed by your honor, the said one-third interest in said lands may be sold to pay off said debt; and the said defendant, Clarkson, may be liable to pay to complainant all or any portion of said sum, so found to be due him (orator) as aforesaid, and which may not be paid off by proceeds arising from the sale hereinbefore prayed for."

To the amended bill, the defendant Truss demurred, assigning the following grounds: "1. That Clarkson ought to be joined as a complainant. 2. That the bill as amended is a total departure from the original bill. 3. That the bill as amended is multifarious in that it seeks to enforce a vendor's lien against Truss and contribution against Clarkson. 4. Misjoinder of parties defendant for same reason. 5. Bass' personal representative should be made a party defendant." The defendant Clarkson demurred to the amended bill upon the following grounds: "1. That the bill as amended is a total departure from the original bill. 2. That Miller has an adequate remedy at law against Clarkson. 3. Multifarious as it seeks to foreclose a vendor's lien against Truss and a contribution against Clarkson. 4. No equity in the bill as amended, because Miller seeks to recover from Clarkson one-half of the Williams note and not one-half of what Miller paid. 5. Because the bill fails to aver how much Miller has paid, or when he paid it, to discharge the Williams note." The court overruled all the grounds of demurrer of each of the defendants, except the fifth ground of the demurrer interposed by Truss. Thereupon the defendant amended his bill by making the administrator of the estate of W. J. Bass, deceased, a party defendant. Truss filed a sworn answer, as required by the bill, in which he denied any knowledge as to the business matters between the complainant and the defendant Clarkson, on the one hand, and Williams on the other. He further averred

in his answer that he obtained judgment against W. J. Bass; that execution was issued thereon, levied upon Bass' interest in the land in controversy, and such interest was sold, at which sale he, Truss, became the purchaser; that he never had any knowledge or information prior to the filing of this bill, that Bass had not paid in full for his interest in said land, or that the complainant, Miller, claimed a vendor's lien on said interest; that the deed, which was executed by Miller and Clarkson to Bass, conveying an undivided one-third interest in said land, was signed by Miller and Clarkson and their wives, was a warranty deed, and was on file in the probate office at the time he recovered his said judgment against Bass, and at the time of the levy of the execution and sale thereunder; that he, Truss, purchased the interest of said Bass in good faith, and satisfied his judgment in full; that he not only had no notice of the vendor's lien or equity set up by complainant, but that he knew no facts calculated to put him on notice as to such lien or equity at the time of the purchase or before he satisfied said-judgment.

The defendant Clarkson filed an answer in which he denied that he became liable to contribute and pay to said Miller the sum of $926.75, with interest from the date of the maturity of the note given to Williams; and averred that if he was liable to contribute and pay to said Miller any sum whatever, it was only one-half of whatever sum Miller had paid to Williams in extinguishment of their joint liability. This defendant then pleaded in his answer, that if he was liable to contribute and pay to Miller anything on account of what he, Miller, paid to Williams on their note, such liability accrued and became due and payable on January 31, 1887, the time when in his bill he avers he paid said money to Williams, and that, thereafter, his liability to pay back and contribute to said Miller is now and was, at the time of the filing of the original bill in this case (on April 21, 1893), barred by the statute of limitations of six years. And this defendant further pleads and says that any liability on his part to contribute and pay back to said Miller any part of the sum of money paid by Miller to Williams, on their joint note to Williams, is and was barred by the statute of limitations of six years, before the filing of the amended bill of complaint in this

cause, on the 13th day of February, 1894, seeking and praying to compel contribution for the money so paid. This defendant also set up in his answer that his liability to Miller was not on the note, but by account, and that said account was an open account, and was due more than three years before the filing of the bill in this case, and was, therefore, barred by the statute of limitations.

The evidence for the complainant tended to substantiate the averments of his amended bill, and he testified that he told one Miles, the attorney for Truss, after he saw the advertisement of the sheriff's sale of Bass' interest in a newspaper, that Bass had never paid for said land, and that he, the complainant, and Clarkson had a vendor's lien on the same, and that on the day of sale, Clarkson and the complainant forbade said sale.

The testimony for the defendant Truss, as to the question of his notice of complainant's claim against the property, was given by said Miles, the attorney of the defendant and the defendant himself. Miles testified that about 60 days prior to the sale under levy and execution, he was told either by complainant or Clarkson or some one representing them, that they had a claim against the land that had been levied upon by the sheriff as the property of Bass, but that he did not recollect whether it was a mortgage or a vendor's lien, and that he gave the information he received to Truss. Truss testified that he was never informed by his attorney or any one else, before the levy or before the sale, that the complainant, Miller, and Clarkson had any claim against the land of Bass for the unpaid purchase money, or that they had a vendor's lien on said land; that his attorney informed him that there was a warranty deed on record from the complainant and Clarkson conveying said land to Bass; and that, after the levy of the execution and before the sale, his attorney notified him that there was an old mortgage to Williams on the land, but that he learned from another attorney that said mortgage had been paid off. Upon the re-examination of Miller, he testified that upon refreshing his recollection, he remembered that the claim which he was told about was a mortgage upon the tract of land which was given to Williams, which he was informed had been settled. The other testimony of the defendant Truss and the defend-

ant Clarkson tended to substantiate the averments of their respective answers.

On the final submission of the cause, on the pleadings and proof, the chancellor decreed that the complainant was entitled to relief and ordered accordingly. From this decree the defendants appeal, and assign the rendition thereof as error.

WALKER, PORTER and WALKER, and JAMES E. WEBB, for appellants.—The amended bill was an entire departure from the original bill, and therefore the demurrers raising this question should have been sustained.—*Stephenson v. Brunson*, 83 Ala. 454 ; *Rapier v. Gulf City Paper Co.*, 69 Ala. 476 ; *Ray v. Womble*, 56 Ala. 32 ; *Ward v. Patton*, 75 Ala. 207.

The complainant paid the joint debt on January 31, 1887, and the bill not being filed until April 1, 1893, the demand was barred by statute of limitations. The statute of limitations began to run from the date of the payment.—4 Amer. & Eng. Encyc. of Law, 3 ; *Sherrod v. Woodard*, 4 Dev. (N. C.), 360 ; *Ponder v. Carter*, 12 Ired. L. 242 ; *Singleton v. Townsend*, 45 Mo. 379 ; *Preslar v. Stallworth*, 37 Ala. 402 ; *Broughton v. Robinson*, 11 Ala. 922. The same rule applies between co-sureties.—Brandt on Suretyship, § 295 ; *Stallworth v. Preslar*, 34 Ala. 509. The statute of limitations begins to run between co-sureties at the time the debt is paid, irrespective of the time when the obligation was entered into or became due.—Brandt on Suretyship, § 295 ; 24 Amer. & Eng. Encyc. of Law, 817 ; *Knotts v. Butler*, 10 Rich. Eq. (S. C.) 143 ; *Camp v. Bostwick*, 20 Ohio St. 337 ; *Beck v. Tarrant*, 61 Texas 402.

By the purchase at the execution sale, Truss acquired title to the land purchased, and his interest therein can not be subjected to the claim of the complainant in the present suit.—*Goodbar, White & Co. v. Daniel*, 88 Ala. 583 ; *Craft v. Russell*, 67 Ala. 9 ; *Dickerson v. Carroll*, 76 Ala. 377 ; *Preston v. McMillan*, 58 Ala. 84.

J. M. MARTIN, *contra.*—Truss, in buying the property at sheriff's sale, did not buy the thing itself, but the real or supposed right which the defendant in execution had to it ; and the purchase operated precisely the same as if he had bargained for and obtained a quit

[Truss, *et al.* v. Miller.]

claim.   The basis of the whole doctrine is *caveat emptor*; the rule of sheriff's sales, that one must inquire before purchasing.—*Goodbar, White & Co. v. Daniels*, 88 Ala. 589 ; *Lindsay v. Cooper*, 94 Ala. 179.

The purchaser at an execution sale of real property acquires no other or greater interest therein, than was owned by the execution debtor at the time of sale, or levy of execution.—*Wood v. Holly Mfg. Co.*, 100 Ala. 352; *Loveless v. Webb*, 62 Ala. 278 ; *Fore v. McKenzie*, 58 Ala. 115 ; *Bland v. Bowie*, 53 Ala. 161 ; *Derrick v. Brown*, 66 Ala. 162 ; *Smith v. Perry*, 56 Ala. 266 ; *McMillan v. Rushing*, 80 Ala. 402.

The plea, or defense, of the statute of limitations, can not avail appellee Clarkson anything.   On the 23d of January, 1888, Clarkson paid Miller $610.95, upon the indebtedness due to Miller, after Miller had made payment of the note and mortgage.   The original bill in this cause was filed on the 1st of April, 1893, within the six years next ensuing said payment.

Contribution can be enforced of appellant Clarkson in equity, although appellee Miller had his remedy at law.—*Handley v. Heflin*, 84 Ala. 600 ; *Bragg v. Patterson*, 85 Ala. 233 ; *Werborn v. Kahn*, 93 Ala. 201 ; *Owen v. McGehee*, 61 Ala. 440.   The right to contribution does not arise from contract, but from equitable considerations, growing out of the relations the parties bear to each other ; and from the fact, that they have a common interest and a common burden to bear ; and that the whole burden should not fall upon one of them.—*Pinkston v. Taliaferro*, 9 Ala. 550-1; *Bezzell v. White*, 13 Ala. 422.

BRICKELL, C. J.—The correction by amendment, at any time before final decree, of insufficiency or of error, in the allegations or prayer of a bill in equity, is matter of right secured by statute.—Code of 1886, § 3449.   The limitation of the right is, that by amendment, an entirely new case may not be made ; nor, what is essentially the same thing, a radical departure from the cause of action as stated in the original bill ; nor an entire change of parties plaintiff or defendant. Within this limitation, all errors of omission or commission are curable by amendment.   The theory of the demurrer to the original bill was, that the purpose of

the bill was the foreclosure of the mortgage to Williams, to secure the payment of the purchase money of the lands in controversy; the mortgage debt having been purchased by the plaintiff, one of the debtors and promissors, thereby extinguishing it. If the correctness of this theory was conceded, the error was in the prayer of the bill for the foreclosure of the mortgage. The bill stated the relations of the parties, and their relations to the lands—the joint purchase from Williams by the plaintiff and Clarkson, the making of a joint note for the purchase money, and the execution of the mortgage to secure its payment; the subsequent sale to Bass, by Clarkson and the plaintiff, of an undivided one-third interest in the lands, the conveyance to him, and the taking of his note for a part of the purchase money, payable to the plaintiff and Clarkson, which was unpaid; the purchase by the defendant Truss, at execution sale, of Bass' interest in the lands, and his subsequent assertion of right and interest. These were the allegations of the original bill, retained and repeated in the amendment. In no proper sense, may it be said, the amendment departed from the original bill, or has any element of a new case. The combination of facts from which the right of the plaintiff to equitable relief arises are unchanged; the relations of the parties are not varied; the enforcement of a lien on the lands for the payment of the purchase money due from Bass is relief of the same kind and nature which would have been obtained if the prayer of the original bill for the foreclosure of the mortgage is conceded to have been inappropriate; a question not now involved. Nor is there force in the objection, that the original bill was for the foreclosure of a mortgage, and by the amendment it is converted into a bill to enforce the equitable lien of a vendor of lands.—*Moore v. Alvis,* 54 Ala. 356; *Pitts v. Powledge,* 56 Ala. 147; *Adams v. Phillips,* 75 Ala. 461; *Bolman v. Lohman,* 74 Ala. 507. The material, controlling inquiry, in determining whether an amended bill makes a new case, or essentially departs from the case made by the original bill, is, whether the allegations of fact setting forth the right and title of the plaintiff, and the wrong or liability of the defendant, are changed, and for them other facts substituted from which the right to relief is deduced. The combination of facts constituting the cause of action, and from which plaintiff

deduces the right to equitable relief, is not varied—the facts form the *gravamen* of the original and of the amended bill.

2. The demurrer on the ground of multifariousness was properly overruled. It is said, that multifariousness, as an objection to a bill, is not capable of an accurate definition. It is described generally, as the joinder of distinct and independent matters, thereby confounding them; or the uniting in one bill of several matters, perfectly distinct and unconnected against one defendant; or the demand of several matters of a distinct and independent nature against several defendants in the same bill.—Story Eq. Pl., § 271. When, as in the present case, the objection is, that distinct and unconnected matters are joined against several defendants, it is not necessary that all the parties should have an interest in all the matters of controversy; it is sufficient if each defendant has an interest in some of the matters involved and they are connected with the others.—Story Eq. Pl., § 271a; *Kennedy v. Kennedy*, 2 Ala. 609; *Larkins v. Biddle*, 21 Ala. 252; *Fleming v. Gilmer*, 35 Ala. 62; *Randle v. Boyd*, 73 Ala. 282; *Bolman v. Lohman*, 74 Ala. 507. The principal subject matter of suit is the land, and the primary controversy is, whether the defendant Truss, by his purchase at execution sale, acquired an interest in it, freed from all liability to subjection to be charged by the mortgage to Williams, and from the lien for the purchase money due from Bass. Conceding that he is without interest in, or connection with, the equities existing between the plaintiff and the defendant Clarkson, if there is right to subject the lands, he is a necessary, indispensable party, and without his presence a decree can not be rendered quieting the litigation. If the lands be subjected, the moneys derived from the sale of them, must be applied to reimburse the plaintiff the moneys he paid Williams, in discharge of the debt due from him and Clarkson, relieving Clarkson to that extent, from the duty and liability to make contribution. It would lead to a multiplication of suits, embarrassing the administration of justice, the land being the principal subject of controversy, if all the rights and equities of the parties, growing out of a series of transactions connected with it, were not capable of determination in a single suit.

3. It can not be doubted that Clarkson is bound to pay to the plaintiff his *pro rata* and just proportion of the joint debt of himself and the plaintiff to Williams for the original purchase, which the plaintiff acquired before maturity. The relation of joint promissors for a common debt is, that each is principal for his own share of the debt and surety for the other for the balance ; but as to the common creditor, they are both principals.— *Owen v. McGehee*, 61 Ala. 440 ; 1 Brandt on Suretyship, § 38. The satisfaction by one of the common burden, whether before, or at, or after maturity, brings the other under duty to contribute to the one thus paying the debt an equitable proportion of the amount required for its discharge.—1 Story's Eq. Juris., §§ 493–495. Of course the parties making a contract have a right to stand upon its terms, and hence a payment before maturity by one of two joint obligors or promissors, without adoption and agreement by the other, would give no right of action until the maturity of the debt, nor could the amount of the liability exceed the full share of the debt. The effect of the payment by the plaintiff of the common debt of himself and Clarkson to Williams before maturity, was an equitable assignment to plaintiff as against Clarkson of the security (mortgage) held by the creditor, for the portion of the debt for which the plaintiff stood as Clarkson's surety. The plaintiff would have this much by subrogation to Williams' position as a creditor of Clarkson as principal, with the plaintiff as surety for him. And the act of the creditor in transferring the note to the plaintiff and in leaving the mortgage uncancelled upon the record did no more than to preserve the vitality of this unquestioned right of the plaintiff as a surety for Clarkson.—3 Pom. Eq., § 1221 ; *Knighton v. Curry*, 62 Ala. 404 ; *Sawyer v. Baker*, 72 Ala. 49 ; *Newbold v. Smart*, 67 Ala. 326.

4. While it may be undoubtedly true that under our decisions, had there been no notice of the plaintiff's right, until after the levy of Truss' execution on the land purchased by Bass, or the creation of the lien thereon by placing an execution in the hands of the sheriff, the right of Truss would be superior to the right of the plaintiff, (*McMillan v. Preston*, 58 Ala. 84 ; *Walker v. Elledge*, 65 Ala. 51 ; *Dickerson v. Carroll*, 76 Ala. 377 ; Code of 1886, § 1846) ; yet, if Truss had actual, or con-

[Truss, *et al.* v. Miller.]

structive, notice of plaintiff's equity, which is superior
to any right in Bass, at least to the extent of the latter's
debt for the land claimed as his, it is evident that Truss,
who is only a creditor of Bass and standing in his shoes,
can not complain that Bass' land is subjected to the lien
resting on it for the purchase money. The question then
is, whether Truss can be said to have had notice of plain-
tiff's equity. One link in the chain of Bass' title was
the conveyance from Williams to plaintiff and Clarkson.
Bass had to claim through this title and, of course, he
and Truss, as his creditor, had the mortgage of Clarkson
and Miller to Williams staring them in the face, unsat-
isfied upon the records.—*Shorter v. Frazer*, 64 Ala. 74-81;
*Marks v. Cowles*, 61 Ala. 307; *Johnson v. Thweat*, 18 Ala.
741; *Witter v. Dudley*, 42 Ala. 616; *Campbell v. Roach*,
45 Ala. 667. And this imputed notice is incapable of
being explained away or rebutted, and will prevail
against a positive denial of notice in a verified answer.—
2 Lead. Eq. Cases, 189. The record informed Truss,
before he obtained his judgment, that Bass' land was
subject to this unsatisfied mortgage given to secure the
note taken up by the plaintiff. It can not be doubted,
and it must be presumed, that if Truss had inquired of
the mortgagors, or the mortgagee, he would have been
fully informed as to the entire transaction. Good faith
required him to have pursued this inquiry. The mort-
gage was a charge upon the Bass land to the extent of
Bass' debt for his purchase. If Bass had discharged the
mortgage to Williams he would have had no recourse
upon the covenants of warranty in his deed, except for
the surplus above his own debt to his vendors. An in-
quiry made of Williams about the unsatisfied mortgage,
would have revealed the fact that the plaintiff had taken
up the debt before maturity, and that the note had been
transferred to him. And an inquiry of the plaintiff
would have disclosed his equitable right to the mortgage
as a security, and that the Bass land had not been paid
for, and that Bass had no right to claim it to be freed
from the mortgage until he paid for it. We can not
doubt that such would have been the result of any inquiry
made respecting the title, nor can we doubt that the un-
satisfied mortgage to Williams was sufficient to put
Truss upon inquiry of Bass' connection with the title
and his right to the land purchased by him. Whoever

is put upon inquiry is fully informed, unless he shows that inquiries are unavailing.—16 Am. & Eng. Encyc. of Law, 792–795 ; *McGehee v. Gindrat*, 20 Ala. 95.

Our conclusion is that Truss, as a creditor of Bass, can not claim to be exempt from the plain equities against the land purchased but never paid for by Bass. The execution of the warranty deed to Bass gave him no right in equity to resist the mortgage to Williams, still alive after Miller's payment, until he had paid for the warranty. He could insist upon no relief, except upon the condition of paying his own debt, which he has never done. Truss, as succeeding to Bass' title, can assert no greater rights to an estoppel from the warranty deed to Bass than he could himself. Estoppels are mutual and co-extensive, and any privy succeeding to the estoppel of another only succeeds to it as possessed by the party he represents. So that Truss, claiming the benefit of the deed and covenants to Bass, as relieving his property from the Williams mortgage, is barred, as Bass was, from asserting such estoppel until the purchase money of the land is paid.

5. There is no force in the insistence, that the plaintiff's demand against Clarkson for contribution is barred by the statute of limitations. The common debt to Williams did not mature until the 3d day of December, 1887, and until its maturity the liability of Clarkson to contribute did not arise. The prior purchase of the note by the plaintiff, while it created the liability, did not hasten the day of payment, as that was expressed in the contract into which the parties had entered. Besides, it is shown that Clarkson made a payment on the debt in January, 1888. The original bill was filed in less than six years after the maturity of the common debt, and after the partial payment. The demand has in it no element of an open account, suits on which are barred in three years, and is subject only to the bar of the statute of six years.

We find no error in the record, and the decree of the court of chancery must be affirmed.

Affirmed.