# Hunt *v.* Stockton Lumber Co.

*Bill in Equity for an Accounting, and for the Specific Performance of a Contract.*

1. *Chancery practice; final decree; amendment.*—Where a cause is submitted upon an agreed state of facts for decree upon the equities of the same, such agreement providing for a reference afterwards to the register to state the accounts between the parties, a decree adjudging the complainant entitled to the relief prayed for and ordering a reference is final within the meaning of section 3449 of the Code, allowing amendments at any time before final decree.

. 2. *Same; same; facts of this case.*—A bill asserted an equity in land, and prayed for an accounting and a specific performance of a contract. The case was submitted on agreed statement of facts for a decree as to whether the equity, which was denied by the answer, ever existed, and was then alive. It was further agreed that if the chancellor found in the affirmative, he was to declare the equity of full force, subject to adjustment of the account, and order a reference, and on the coming in of the register's report "the cause" was to "be submitted for a final decree upon the pleadings, and upon the within statement of facts, as well as upon the report of the register, and the exceptions thereto, and the evidence in support of such report and such exceptions." *Held:* That a decree rendered thereon discharging one defendant as having no interest, declaring the other to hold title subject to equity of complainant, who was adjudicated entitled to the relief prayed, subject only to adjustment of the account, and ordering the register to state an account, and reserving "all other matters" for "future consideration and decree," was final, and that the bill could not thereafter be amended.

3. *Statement of account; province of register.*—While the data furnished in support of a bill in equity for an accounting may be sufficient to enable this court, on appeal, to state a correct account, it is a duty that properly belongs to the register, and where the transactions are numerous and accounts are complicated, extending over many years, this court will not undertake to state the account between the parties.

4. *Agreement with partnership; individual accounts; pleading.* Upon a bill in equity seeking the settlement of an account with a partnership, the mutual individual accounts of the parties to the settlement have no place in the adjustment, in the absence of any pleading setting up such accounts.

5. *Subsequent modification of agreement; stated account.*—Where the

[Hunt v. Stockton Lumber Co.]

parties agree that in their dealings the payments should be applied in a certain way, but they are subsequently applied by the creditor differently, with the knowledge and acquiescence of the debtor, the account becomes stated and is equivalent to an implied modification of the prior agreement, subject only to correction of mere mistakes, or avoidance for fraud.

6. *Same; right to be credited with proceeds of sale; facts of this case.*—Where R. agreed to pay notes which H. owed on a land contract, and take title to the lands, and open an account charging it with the notes and all interest annually that might accrue on them, and with any expense incurred on account of the lands by R., and to credit the account with all payments to R. on account of the lands, and all profits arising therefrom, and to convey a half interest in the lands to H. when the account should be paid, the account thus opened should be credited with proceeds from the sale of part of the lands, the sale being ratified by him, though the sale was made after H. filed a bill for an accounting and for a specific performance of the contract.

7. *Interest; how allowed in accounting; compound.*—In stating an account running through many years, compound interest should not be allowed; but the interest should be computed by applying all partial payments to the extinguishment of interest first, and the balance, if any, to the principal, as provided by section 753 of the Code of 1886.

8. *Purchase of land by one party under agreement to convey one-half interest to the other; mutual accounts; specific performance; sale of portion to third party.*—Where land is paid for by one party and title obtained in his name under an agreement with the obligee in a bond for title by which, upon compliance with certain conditions a half interest in the land is to be conveyed to said obligee, and the parties have mutual accounts extending through a series of years growing out of the contract and also other accounts made a part of the original transaction by a subsequent agreement, upon a bill filed for an accounting and specific performance of the contract, where the proof shows that a portion of the land has been sold pending the suit to a third party for a large sum, the complainant should be allowed to ratify the sale and receive his proportion of the benefit, or an equitable interest in the land so sold should be decreed in his favor; and a decree, which, without allowing complainant such election and benefit requires him to pay the balance found due upon a statement of accounts, within a certain designated time as a condition to the enforcement of the contract, is erroneous.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. WILLIAM H. TAYLOE.

The original bill in this case was filed on April 20, 1891, by the appellant, Henry J. Hunt, against the appellee, the Stockton Lumber Company, and against George W. Robinson and Benjamin J. McMillan, part-

[Hunt v. Stockton Lumber Co.]

ners under the firm name and style of Robinson & Mc-
Millan. The following facts were averred in the bill:

On January 6, 1877, Henry J. Hunt and one W. H.
Silver, as executor of the last will and testament of
Joseph Silver, deceased, entered into a written agree-
ment by which Hunt bought all the lands which had
been owned by the testator in Baldwin, Clarke and Mo-
bile counties, for $11,000. Hunt paid $1,000 in cash
and gave several notes for the deferred payments. This
agreement settled all matters up to the date of its exe-
cution, between Hunt and the testator's estate. On
June 2, 1883, Hunt and W. H. Silver, the executor, had
an accounting, by which it was shown that Hunt owed
the estate $5,500. For this sum he executed his two
notes, one for $2,500 and the other for $3,000. These
notes were a settlement of Hunt's indebtedness to the
estate at the time of their execution, and the executor
surrendered the other notes to Hunt. On the same
day—June 2, 1883—the said Henry J. Hunt entered into
a written agreement with Robinson & McMillan. This
agreement is copied in the opinion. Under this agree-
ment Robinson & McMillan paid said notes, and Hunt
caused said lands to be conveyed to them by Silver, the
executor. After said conveyance, Robinson & McMillan,
having become financially embarrassed, in August, 1884,
conveyed the lands in question in payment of a debt to
M. A. Robinson, the wife of said George W. Robinson,
and she in turn sold and conveyed the said lands to the
Stockton Lumber Co., who held the legal title to said
property at the time the bill in this case was filed, sub-
ject only to the rights of the complainant, Hunt. Hunt,
having entered into possession of the lands in January,
1877, under his contract with Silver, remained in pos-
session under his contract with Robinson & McMillan
up to the time of the filing of the bill in this case.

It was further averred in the bill that at the time
the said Robinson & McMillan and complainant entered
into the said contract above mentioned, the said Robin-
son & McMillan opened the account provided for by said
agreement, and since said time said account has been
kept open and charged and credited in the manner stip-
ulated in said agreement, except that many credits to
which complainant was entitled upon said account have
not been allowed and entered. The said account was

[Hunt v. Stockton Lumber Co.]

kept by said Robinson & McMillan until the formation of said Stockton Lumber Company, and since that time the said Stockton Lumber Company has continued said account with complainant. The said account was opened and kept under the terms of said agreement, and had always been known by the complainant, the said Robinson & McMillan, and the said Stockton Lumber Company, as the "Land Account," and this account is still open and unsettled, and complainant charges that upon a proper settlement between him, on the one part, and the Stockton Lumber Company and Robinson & McMillan, on the other part, there will be a considerable sum coming to complainant, after the payment of all proper debits upon said account in full, in accordance with said agreement. The complainant further averred in the bill "that notwithstanding the fact that he has fully complied with all of the provisions of said contract, and has fully paid for the said lands, and is entitled, therefore, to have conveyed to him by the said Robinson & McMillan and by their privy, the said Stockton Lumber Company, a one-half undivided interest in the said lands under said contract, the said Stockton Lumber Company has, in violation of the said agreement, brought a suit of ejectment against your orator in the circuit court of Baldwin county, seeking to eject your orator from all of his said lands."

The prayer for relief was as follows: "1st. That the defendants may make full and true discovery and disclosure of all and singular the transactions and matters aforesaid, and that an account may be taken and under the direction and decree of this honorable court of all the dealings and transactions between the complainant and the defendants, so far as the same may relate to the contract set forth in the third paragraph of the original bill of complaint and so far as the same applies to the transactions between said parties under said agreement.

"2d. That the balance which shall be found due upon the taking of such account, may be paid by the defendants to the complainant, the complainant being ready, and hereby submitting to pay to them any balance which may be found due from him to the said defendants on the aforesaid account.

"3d. That in the meantime the said defendants may be restrained by the order and injunction of this honor-

[Hunt v. Stockton Lumber Co.]

able court from further proceedings in said action at law against the complainant, in respect to, or concerning the matters aforesaid, or any of them.

"4th. That the said defendants may be decreed specifically to perform the said agreement of the said 2d day of June, 1883 ; the complainant hereby offering specifically to perform said agreement upon his part, if in anything therein he has failed, and that for the purpose aforesaid, all further directions may be given and inquiries made.

"5th. That the complainant may have such other or further relief as the nature of the case may require, as in duty bound he will ever pray, &c."

Answers were filed by all the parties, admitting the allegations of the bill except as to the condition of said account, and as to the claim that upon a proper statement thereof, there would be a balance due Hunt. There was an agreement entered into as to the submission of the cause to the chancellor during vacation, the material portion of which is copied in the opinion. The decree rendered upon such submission is also copied in the opinion.

The complainant was allowed by the register to amend his bill of complaint and his prayer, so as to ask that the Stockton Lumber Company be decreed and ordered to convey its entire interest in said lands to the complainant upon his paying to it the full sum of money, if any, which may be ascertained to be due upon said loan under the contract between the complainant and Robinson & McMillan. This amendment is sufficiently shown in the opinion.

On March 16, 1895, after having previously, on January 22, 1894, rendered a decree passing upon the many exceptions taken to the report of the register, the chancellor rendered a final decree, without passing upon the right of the complainant to make the amendment to his bill which was allowed by the register. This final decree adjudged that there was due on May 1, 1894, to the Stockton Lumber Company from the complainant, the sum of $3,316.33, upon the said land account, which indebtedness "is a charge upon the undivided one-half interest in and to the lands described in the bill of complaint, omitting the land sold by consent." This decree then proceeds : "It is further ordered, adjudged and

decreed that said complainant is entitled upon the payment of the said sum hereinbefore named, with interest thereon from May first, 1894, to the Stockton Lumber Company, and also upon the payment of three-fifths of the cost of this cause to have and receive from said Stockton Lumber Company a conveyance of an undivided one-half interest in and to the said lands described in the complaint, less the said lands sold to D. D. Hall and Carrie E. Moore ; and complainant having submitted himself to the orders and directions of this court in respect thereto, it is further ordered, adjudged and decreed, that the said complainant shall pay unto the said defendant the said money hereinbefore ascertained to be due to the Stockton Lumber Company, and the interest thereon, and said three-fifths of the costs of this cause within sixty days from the filing of this decree in the registry of this court, and that thereupon and upon the payment by him of said sum of money and interest and costs the said Stockton Lumber Company shall convey unto the said complainant an undivided one-half interest in said lands described in the bill, less the lands sold to said Hall and said Moore.   But the default in the payment by the said complainant of the said amount within the time hereinbefore limited, with the interest, unto the said defendant, the Stockton Lumber Company, and three-fifths of the costs, the said complainant shall at and after the expiration of the said sixty days, and from thenceforth stand absolutely and strictly debarred and foreclosed forever of and from all equity of redemption or other equity or interest in and to the said lands and premises described in the bill, and shall then forthwith surrender possession of the same to the said Stockton Lumber Company.''

The other facts of the case are sufficiently stated in the opinion.   The complainant appeals from this decree and assigns as error the failure of the chancellor to decree to the complainant the relief especially prayed for in his bill as amended ; and also the other decrees which were rendered by the chancellor at different stages of the proceedings.

GREGORY L. & H. T. SMITH, for appellant.—1.   The agreement between Robinson & McMillan and Hunt must be viewed in the light of two facts:   1st.   The

land, to the whole interest in which they took title under this agreement, was worth just twice the sum they advanced, the other one-half of the purchase money having already been paid by Hunt.—*Russell v. Southard*, 12 How. 148; *Adams v. Pilcher*, 92 Ala. 474. 2d. They were to receive their money back with legal interest. It was therefore, nothing more or less than a mortgage.—*Daniels v. Lowery*, 92 Ala. 519; *Hughes v. McKenzie*, 101 Ala. 415; *Hodges v. Verner*, 100 Ala. 612. It is not at all unusual for the usurer to hide his exorbitant demands against the necessitous, behind such forms as that in which the contract is written, but it is the real transaction to which the court looks; and all such transactions where the lender demands a bonus in addition to his legal interest are usurious.—*Uhlfelder v. Carter*, 64 Ala. 532; *Barr v. Collier*, 54 Ala. 40; *Wright v. McAlexander*, 11 Ala. 236; 27 Amer. & Eng. Encyc. of Law, 1025-6. This being the character of the contract, the lands having been conveyed to Robinson & McMillan, therefore, only as security for the loan, the complainant was entitled to have the entire security released to him upon the payment of the entire debt and interest, and the court erred in directing the conveyance to him of only one-half of the lands, and allowing the defendants to retain the other one-half as a bonus for making the loan on legal interest. The general prayer was sufficient to entitle the complainant to this relief. Indeed the only difference between relief granted and that contended for, is in the extent thereof and not in its character—it is only a difference in the quantum of the estate in the lands which should be conveyed to him.—*Kelly v. Payne*, 18 Ala. 371; *May v. Lewis*, 22 Ala. 646; *Munford v. Pearce*, 70 Ala. 458; *Tyler v. Savage*, 143 U. S. 98.

The chancellor treated the decree of August 29th, 1892, as a final decree, and has upon this ground ignored complainant's amendment of later date. We do not think this decree was a final decree. If we are right in this, the chancellor certainly erred in ignoring the amendment on this ground. If, however, the chancellor was right, and it was a final decree, then he erred in adding thereto the provision debarring Hunt's rights unless he paid the balance within sixty days. If the decree of August 29, 1892, was final, nothing could be subsequently added thereto.—*Jones v. Wilson*, 54 Ala. 55. The

decree of August 29, 1892, in fact, was not a final decree, but was an interlocutory decree.

In the first place, the court could render no final decree in vacation, except by consent, and there was no consent for a final decree. By reference to the agreement of submission, it will be found that the consent was to the rendition only of an interlocutory decree, and provided in terms for a future submission for a final decree. The decree itself undertook only to express the opinion of the chancellor, to order a reference, and to reserve all other questions. It granted no relief. From it no one could learn whether the complainant was to have the whole or one-half of the lands upon paying the balance that might be found to be due upon the account, or whether complainant would be compelled to pay one-half of the entire balance as a prerequisite to such relief; whether the special relief prayed for or the other relief sought under the prayer for general relief was to be granted, was not ascertained. In short, the court simply followed the practice suggested in the case of *Jones v. Wilson*, 54 Ala. 55, and rendered an interlocutory decree, expressing its view that the complainant's equities were still alive and referring it to the register to state the account and reserving the relief for a final decree. This was only an interlocutory decree and the amendment was therefore in time.—*Kimbrell v. Rogers*, 90 Ala. 343; *Garner v. Prewitt*, 32 Ala. 13; *Jones v. Wilson*, 54 Ala. 55.

The defendants contend that the register should have ascertained what, if any, balance was due upon this account, and charged such balance as a debt on the land account, so that they, said defendants, might hold the land in question as security for this account, as well as for the land account provided for by the agreement. This contention, however, is, as we understand it, directly in conflict with the cases of *Spies v. Price*, 91 Ala. 168; *Lehman v. Collins*, 69 Ala. 132; *Perdue v. Brooks*, 95 Ala. 611.

CLARKES & WEBB and PILLANS, TORREY & HANAW, *contra*.

COLEMAN, J.—On the 2d day of June, 1883, the following agreement was entered into between the ap-

[Hunt v. Stockton Lumber Co.]

pellant, Henry J. Hunt, and a partnership styled Robinson & McMillan :

"This memorandum of agreement, made at Stockton, Ala., on the 2d day of June, 1883, between Robinson & McMillan of the first part, and H. J. Hunt of the second part, all of Baldwin County, Alabama, witnesseth :

"That Robinson & McMillan agree to pay two notes due the Jos. Silver estate by H. J. Hunt, the first note now due of two thousand and five hundred dollars ($2,500), and second note due twelve months from date, for three thousand dollars ($3,000), and have titles of all lands with improvements thereon belonging to the estate of Jos. Silver, and lying in Baldwin and Clarke counties, and now controlled by H. J. Hunt, made to Robinson & McMillan.

"Further, that Robinson & McMillan agree to open and keep an account with 'Silver Land,' charging said account with these notes and all interest annually that may accrue on them, also with all or any other expense they may incur on account of these lands.

"Further, that H. J. Hunt agrees to protect these lands against all depredations, and to pay five hundred dollars ($500) for the use of said lands this year, 1883, which is to be placed to the credit of said land acount. It is agreed that said lands are to be used after this year, 1883, as may be agreed upon by Robinson & McMillan and H. J. Hunt, to be most profitable to all concerned, and all payments to Robinson & McMillan on account of these lands, and all profits arising therefrom are to be credited to said land account, and when said land account and expenses, with interest, is all paid and the account balanced, Robinson & McMillan agree to make titles to H. J. Hunt, for one-half interest in all aforesaid lands.

"It is further agreed that H. J. Hunt is to pay at least five hundred dollars a year to make this agreement binding.

"This agreement is made on this 2nd day of June, 1883, and signed by

"Robinson & McMillan,
"H. J. Hunt."

In April, 1891, the appellant filed the present bill, based upon the above agreement, in which complainant Hunt avers that under the agreement he caused

the legal title to the lands to be vested in Robinson & McMillan—they having paid said purchase money; a compliance on his part with the agreement, a sale and conveyance of the lands by the partnership to the respondent, the Lumber Company, notice to the Lumber Company of the agreement, payment of the two notes by complainant as therein provided for, and prays for a reference and statement of account. The complainant avers that he is entitled under the agreement to have an undivided one-half interest in the lands conveyed to him, and prays that respondent be required to specifically perform his part of the agreement The complainant offered to do equity by paying whatever balance, if any, should be found to be due on the notes.

Robinson & McMillan and the Stockton Lumber Company were made parties respondent. Geo. W. Robinson and Benjamin F. McMillan, parties composing the partnership, each answered the bill admitting the execution of the agreement, the purchase and conveyance to the partnership of the land, but denied the facts averred upon which complainant's rights and equity were rested. The Stockton Lumber Co. answered denying all knowledge of the transaction between Hunt and the partnership, and set up the claim of a *bona fide* purchaser. The parties entered into a written agreement in which certain stated facts were admitted to be true. After stating the facts agreed upon, and which need not be specially stated, the agreement proceds as follows :

" It is also expressly understood and agreed that the foregoing statement of facts should be taken and treated as evidence only upon the question as to whether or not the equity of the complainant in said lands ever existed, and if it did so exist, whether or not the same is still alive, and that no part hereof shall be taken and treated as evidence upon reference to the register for the statement of said account, or for any other purpose save as above stated.

"It is further agreed by and between the solicitors of record in the above entitled cause, that this cause be, and the same is submitted upon the pleading and the within agreement for decree in vacation as to whether or not the equity which is asserted by the complainant ever existed, and still continues alive; and it is further agreed that if the chancellor shall be of the opinion that

said equity would exist and continue assuming that status of said land account to be as asserted by complainant, then the chancellor shall render a decree declaring said equity of full force and effect, subject to the adjustment of said land account, and that the chancellor shall, in vacation, render a decree ordering the register in chancery to hold a reference in this cause, upon which reference either party may introduce whatever evidence they may see fit, as to the proper and true status of the said land account, provided for by the agreement between Henry J. Hunt and Robinson & McMillan, which was made and entered into on the 2d day of June, 1883, and that upon the taking of such testimony, the register shall asscertain and report to the court not later than the first day of the next term thereof, a true statement of said account, to which said report either party may file such exceptions as they may think proper, and such exceptions shall be made and supported according to the usual practice in like cases.

"It is further agreed that upon the coming in of the report of the register, which is herein provided for, the said cause shall be submitted *for a final decree upon the pleadings*, and upon the within statement of facts, *as well as upon the report of the register*, and the exceptions thereto, and the evidence in support of such report and such exceptions."

The cause was submitted under this agreement to the chancellor for decree in vacation, and in August, 1892, he rendered the following decree :

"This cause having been submitted in vacation by agreement between the solicitors of record, upon the pleading and an agreement of facts, it is ordered, adjudged and decreed :

"1.   That the defendants, George W. Robinson and Benjamin F. McMillan, having no interest in this litigation, be and they are discharged in accordance with the prayer of their answer.

"2.   That the Stockton Lumber Company is the owner of the legal title to the lands which are the subject of this litigation, subject, however, to the rights and equities asserted by the complainant in his original bill of complaint, as amended ; and that the complainant Henry J. Hunt is entitled to the relief prayed for in said bill of complaint, subject only to the proper adjustment of said land account.

"3. That the register of this court forthwith, and he is hereby directed, after giving due notice to all of the parties in interest, to hold a reference and ascertain and report to the chancellor not later than the first day of the next term of this court, the present status of the said account so provided for by said agreement, charging said account with all items with which it is properly chargeable, and crediting it with all items which the said Henry J. Hunt may be entitled to have so credited.

"4. That all other questions are reserved for the future consideration and decree of this court."

No appeal was prosecuted from this decree, and more than twelve months after the next regular term of the chancery court, and after the evidence had been closed and the reference executed, the complainant filed an amendment to the original bill which was allowed by the register. By the amendment, the complainant averred, that the written agreement between Henry J. Hunt and Robinson & McMillan of June, 1883, above set out, was intended to operate as a mortgage ; that the money paid to Silver for the land was a mere loan to Hunt, and that the transaction was usurious, the usury consisting in the agreement that in addition to the repayment of the money with legal interest, the partnership was to become the owner of a half interest in the lands. The prayer to the amendment was, that upon payment of the money averred to have been loaned, with legal interest, that respondent be required to convey to complainants the entire interest in the lands.

For several reasons the amendment should not have been allowed. Under section 3449 of the Code of 1886, amendments are allowable at any time before final decree to meet any status of the evidence, which does not make an entirely new case, nor cause a radical departure from the original bill, nor work an entire change of parties.—Code, *supra*, and authorities there cited. We fail to find any state of evidence which authorized the amendment, even if the decree rendered in August, 1892, had not been a final decree. We are clear, however, that the decree of that date was not only correct, but final. By the terms of the agreement and the facts admitted to be true, bearing upon the complainant's equity and right to relief, upon which the submission was made, it was the duty of the court to adjudicate the substantial merits

of the case. It was so adjudicated, and in favor of complainant, upon the case made by his bill and the agreed state of facts. Nothing was left open, and, as we construe the agreement and decree, nothing was intended to be left open, affecting complainant's right to relief, but the execution of the reference and its result.—*Adams v. Sayre*, 76 Ala. 509 ; *Thompson v. Maddux*, 105 Ala. 326.

The other assignments of error relate to the rulings of the court upon exceptions to the report of the register. After an examination of the abstract and the various stated accounts contained in it, we are not satisfied that the rulings of the court upon exceptions reserved, and its conclusion as to the balances due, are correct. It may be that the data furnished is sufficient to enable this court to state a correct account, but that is a duty which properly belongs to the register, and as the transactions are very numerous, complicated to some extent and extending over many years, to undertake it would impose a burden on this court which we are not willing to assume.

Neither the bill of complaint, nor the answer of respondents, indicate that there were individual mutual accounts between any of these parties. No relief is prayed for by either party as to their individual dealings with each other. The balances that may be found to be due on a settlement of their actual individual accounts, have no place in the adjudication of the questions involved in this litigation. Evidence that there were individual dealings and accounts other than the "Silver Land account," provided for in the original agreement and referred to in the bill of complaint, was necessarily admissible, in stating and determining the "Silver Land account."

Under and by virtue of the agreement, "Robinson & McMillan agreed to open and keep an account with 'Silver Land,' charging said account with the notes [the notes paid by them for the land] and all interest annually, and with all or any other expense they may incur on account of these lands." Hunt was to pay five hundred dollars for the use of the lands that year, and at least five hundred dollars annually on the land account, and it was agreed "that all payments to Robinson & McMillan on account of these lands, and all profits arising therefrom are to be credited to said land account,"

[Hunt v. Stockton Lumber Co.]

&c.  The agreement is easily understood.  The complication and difficulties have arisen from the manner of their dealings with each other and the keeping of different accounts.  The parties had the authority by mutual agreement, express or implied, to modify this agreement as to the application of payments.  This the evidence satisfies us has been done.  The respondent is estopped from denying that Hunt has paid five hundred dollars annually.  Hunt has been charged with this amount in his individual account, and the respondent received the benefit of this sum as a debit to diminish liability on the individual accounts.  Hunt cannot now claim the annual payment of five hundred dollars as a credit on the land account, in any case where he has received the benefit of such payment, and credit has been given for it in the statement of the account between him and Robinson & McMillan, or between him and the respondent.  Wherever he received the benefit of these payments on his individual account voluntarily, or at least without objection after statements of accounts to this effect were rendered to him, he cannot insist on their being applied to the "Silver Land account."  Except when the cash was actually paid by him under the original agreement, on the land account, the balance on this latter account must stand undiminished by the annual payments of five hundred dollars, except it should appear that he had been charged with the five hundred dollars, and had not been credited with it.  He is not entitled to two credits—one on his individual account and one on the "Silver Land account"—for one and the same payment.  The statement of the account, involves mere questions of correct book-keeping.  What has been said in regard to the five hundred dollar payments applies to other payments.  The parties are bound by their own contracts, and the evidence satisfies us, that the rule, that where a statement of account has been rendered without objection within a reasonable time, or agreed upon by the parties, it becomes binding, subject of course to correction of mere mistakes, or avoidance by reason of fraud.  Items of debit or credit which were not entered upon the accounts rendered, and have not become binding upon the principles stated, will be determined by the original agreement of the parties as to whether they should be stated in the "Silver Land account."  The

[Hunt v. Stockton Lumber Co.]

chancellor ruled correctly in placing the proceeds of the sale of the land to the credit of the "Silver Land account," and if the sale of a portion of the land to Slaughter since the commencement of this suit is ratified by Hunt, the purchase money should be applied to the credit of the "Silver Land account." The conclusion that the proceeds of the land should be thus applied is sustained by the agreement itself, by the testimony of Hunt and by the account rendered by the respondent, or Robinson & McMillan. We make this suggestion to avoid the filing of a supplementary bill, if the parties see proper to resort to this method of settlement, without additional delay and expense.

In computing the interest on the "Silver Land account," annual rest should not be made so as to allow compound interest, but the interest should be computed as provided in section 1753 of the Code of 1886. We have not examined to ascertain whether an account when stated as herein directed, would result beneficially to the appellant, and entitle him to a reversal of the cause because of injury sustained in stating the account. We think the decree of the chancellor erroneous and unjust to appellant in another respect. It seems to have been in evidence on the reference, that a portion of these lands had been sold to Slaughter, by respondent, for a large sum. The complainant if he sees proper should be allowed to ratify this sale and for the reasons given, as to the credit of proceeds of sale of other parts of the land, the proceeds of this sale should be credited to the "Silver Land account." It may be that this sale has materially interfered with the power of complainant to raise money to satisfy any balance that may be due from him. Equity and justice entitled the complainant to the benefit of this transaction, or to an equitable interest in the lands. If the decree in this case had directed, that upon the failure of complainant to pay the balance decreed against him, conceding that there was a balance unpaid on the "Silver Land account," within a reasonable time stated, his bill should stand dismissed without prejudice, it may be that such a decree would have been free from reversible error. Or, if respondents had in their answer averred a balance due and unpaid on the "Silver Land account," and had asked that its answer be taken as a cross bill, and had prayed for a sale of the equitable in-

terest of complainant, to satisfy such balance as might be found due from him, such relief also could have been equitably granted. Considering the long dealings between the parties, their previous confidence in each other, and the mutual mistake as to their respective rights, under which they labor, the fairness with which they seem to have testified throughout, commend them especially to the benefit of that favorable consideration of a court of equity, which delights in meting out equal and exact justice to all parties. The decree in this case which finally concludes one party from all interest in the lands, except upon compliance with a hard condition to be performed, and which gives the other party all of the proceeds of a sale, or the lands to which the complainant in equity and good conscience has an equitable interest, is not equal justice.

The decree is reversed and the cause remanded.