# Dickens *v*. Dickens.

(Two Cases.)

*Bill for an Accounting and Settlement of Partnership Matters.*

(Decided Nov. 16, 1911. 56 South. 809.)

1. *Appeal and Error; Record; Questions Presented; Review.*— Where the action was against a surviving partner, and the indebtedness of the respondent was determined and ascertained by a special master, whose report was confirmed, and exceptions thereto overruled by a special decree, objections to the amount of the indebtedness thus ascertained should have been raised by assignments of error addressed to that decree, and no question for review of the special decree is presented by assignments of error, based on a subsequent decree.

2. *Same; Finality of Finding.*—Where the action was against the surviving partner who sought cross relief, alleging that the deceased partner was greatly indebted to him and praying an accounting of the partnership affairs from its organization, a decree adjudging that an accounting had been had between the partners, whereby it was agreed that the surviving partner was entitled to only one-third of the partnership property, and ordering an accounting from that time, to be taken by a special master, such decree was final in so far as it adjudged that an accounting had been made between the partners, and as fixing the time from which the special master should make his accounting, but was interlocutory so far as ordering the accounting; hence, those matters finally determined by such decree cannot be reviewed as the decree was not appealed from within the time limited.

3. *Same; Failure to Appeal; Effect.*—Matters adjudged by a final decree from which no appeal was taken within the time fixed by law are concluded by such decree, and cannot be made the subject of assignments of error on an appeal from a subsequent decree.

4. *Same; Necessity of Appeal.*—Where there was a decree adjudging a plea sufficient, and a decree on the issues raised by such plea from which no appeal was taken, assignments of error cannot be based upon the error in adjudging the plea sufficient, although an appeal was taken from a subsequent decree in the same litigation.

5. *Same; Time to Appeal.*—Where there was a decree declining to permit defendant to amend his answer, and a decree disposing of such answer from which no appeal was taken, an appeal taken from a subsequent decree made and entered a year later than the decree on the answer will not support an assignment of error based upon the decree upon the answer, the appeal not having been taken as to the decree on the answer within the time allowed by law.

6. *Same; Waiver of Error.*—The failure of an appellant to insist on an assignment of error in brief or argument is a waiver of it, which cannot be retracted by the filing of a supplemental brief, insisting for the first time upon such assignment.

7. *Partnership; Dissolution; Duties of Surviving Partner.*—Where a surviving partner—also the administrator of the deceased partner —purchased a large amount of goods with the firm's money, and commingled them with the other assets of the firm, and carried on the business of the firm at a profit, until he was removed, he could not be charged with the money expended for the new goods and refused a credit for such goods upon the theory that he was guilty of a wrongful commingling of goods of various owners, as the investment of the firm property in goods was not a commingling of separately owned property.

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by Carrie McGill Dickens against Charles C. Dickens, in which defendant sought cross-relief. From decrees for complainant, both defendant and complainant appeal. Affirmed on both appeals.

See, also 56 South. 806.

The plea referred to in the opinion as filed by Carrie McGill Dickens is as follows: "And for further defense to so much of said cross-bill as seeks an accounting of the partnership matters prior to the 1st day of June, 1903, this respondent pleads specially, and says that the affairs of the partnership heretofore existing between the said J. O. Dickens and Charles C. Dickens was settled between the partners themselves from time to time, and accounts adjusted by them by mutual consent. Further answering, this respondent shows unto your honor that one of said settlements took place on May 1, 1886, another on June 1, 1887, another on June 1, 1888, another on May 31, 1889, another on May 1, 1890, another on May 31, 1891, another on June 1, 1898, another on June 1, 1899, another in June, 1900, another on June 1, 1901, and another on June 1, 1902, and that the last of said settlements took place in June, 1903. At each of said times the status of the partnership mat-

ters were fully agreed upon between the said J. O. Dickens and Charles C. Dickens, and it was fully agreed between the said J. O. Dickens and Charles C. Dickens that the said J. O. Dickens was entitled to an undivided two-thirds interest in the assets of said partnership, and the said Charles C. Dickens entitled to the one-third interest, without accountability for past transactions. Therefore this cross-bill cannot be maintained by the cross complainant for a settlement of the partnership affairs prior to the said 1st day of June, 1903."

So much of the decree of September 30, 1909, as refers to the plea above set forth is as follows: "It is further adjudged that the facts alleged in the plea as filed by the respondent to the cross-bill on April 15, 1908, are true, and that the affairs of the said partnership, which existed between the said J. O. Dickens and the said Charles C. Dickens, were settled between the partners themselves from time to time, and their accounts adjusted by them by mutual consent, and that the last of said settlements took place on the 1st day of June, 1903, at which time the status of the partnership matters were fully agreed upon between Charles C. Dickens and James O. Dickens, and it is further agreed between them that James O. Dickens was entitled to an undivided two-thirds interest in the partnership assets then on hand, and that Charles C. Dickens was entitled to a one-third undivided interest therein; and it is therefore ordered, adjudged, and decreed that the complainant, Carrie McGill Dickens, is entitled to, and the said Charles C. Dickens is hereby ordered to make, a just, true, and correct accounting of the affairs of said copartnership, commencing with the date upon the said settlement of copartnership affairs as made between James O. Dickens, deceased, and Charles C. Dickens, on said 1st day of June, 1903, as the same appears from the books of

said copartnership, and that said settlement shall embrace all transactions of said copartnership, and of said surviving partner in winding up said business, and as administrator down to the time of said accounting, and shall be upon the basis of the ownership of said Charles C. Dickens of one-third interest in said copartnership, and the ownership of James O. Dickens, deceased, of a two-thirds interest therein; that Mrs. Carrie McGill Dickens shall have and recover from Charles C. Dickens whatever balance, if any, may appear to be due from said settlement by the said Charles C. Dickens to the estate of the said James O. Dickens, deceased."

The other parts of the decree, find the fact of the partnership, the fact that Charles C. Dickens had failed to make a just, true, and correct accounting of the affairs of the partnership, either as surviving partner or as administrator, that Mrs. Carrie McGill Dickens is the only heir at law and distributee of the estate of James O. Dickens, and is, therefore, entitled to such accounting. The rest of the decree deals with the reference to him of the accounts and affairs involved for statement and report.

WEBB & McALPINE, for appellant. The court erred in limiting the accounting of the partnership affairs so as to preclude an accounting prior to 1903.—*Scheuer v. Berringer*, 102 Ala. 216. A partner defrauded into a private settlement may institute a suit for a judicial account without rescinding settlement and putting the defrauded party in statu quo.—*Richards v. Frazer*, 122 Cal. 456; *Morrow v. Allison*, 39 Ala. 70; *Hall v. Pegram*, 85 Ala. 528. The statute of limitation does not affect the right of appellant to have an accounting prior to 1903.—*Stovall v. Clay*, 108 Ala. 105. Until the discovery of the fraud, the statute does not begin to run.—

*Johnson v. Johnson,* 119 N. W. 652. Where fraud or undue advantage is made to appear infecting the whole count, the accounting will be entirely annulled and the parties remitted to their rights, as though no accounting had been had.—*Paulling v. Creagh,* 54 Ala. 646; *Gage v. Parmlee,* 87 Ill. 327; *Wahl v. Barnum,* 116 N. Y. 87. Counsel discuss other assignments of error, but without further citation of authority.

GREGORY L. & H. T. SMITH, for appellee. The distinction between a bill for a settlement between partners where there has been no settlement by mutual consent, and a bill to surcharge and falsify as proposed by the amendment is clearly drawn.—*Cowan v. Jones,* 27 Ala. 323; *Shows v. Folmar,* 133 Ala. 599. A plea that there had been a settlement by mutual consent presents a complete defense.—*Adams v. Atkinson,* 158 Ala. 225. The fact that there has been no settlement by mutual consent is essential to the maintenance of the cross bill, and should have been affirmatively alleged.—*Glover v. Hembree,* 82 Ala. 326; *Scheuer v. Berringer,* 102 Ala. 217; *Duggar v. Tutwiler,* 129 Ala. 263. The decree as to the settlement was a final decree and cannot now be reviewed, as no appeal was taken from it within the time allowed by law.—*Adams v. Sayre,* 76 Ala. 509; *Hunt v. Stockton L. Co.,* 113 Ala. 387. The 5th and 6th assignments of error have been waived because of the failure of appellant to discuss them. The same is true of the 8th assignment of error, also of the 9th. However, all cross bills must be germane to the original bill of complaint, and hence, the amendment was properly disallowed.—*Const. Co. v. Webb,* 54 Ala. 688; *Gage v. Mayer,* 117 Ill. 632; *Myer v. Calera L. Co.,* 133 Ala. 557. In order to reopen the accounting it was necessary to establish fraudulent omission of proper charges, and

that the matter complained of was not known to the parties complaining at the time of the settlement.—*Desho v. Sheppard,* 20 Ala. 752; *Schueur v. Berringer, supra; Claflin v. Bennett,* 51 Fed. 700. The amendment was not allowable then for two reasons, first, because it was a departure; second because no evidence was taken to support it.—*Betty v. Brown,* 85 Ala. 209; *Smith v. Coleman,* 59 Ala. 260; *Wright v. Duncan,* 83 Ala. 322. Counsel insist on cross appeal that the court erred in allowing Dickens a credit for the goods bought as he intermingled them wrongfully with other goods, and in support thereof, they cite.—*Alley v. Adams,* 44 Ala. 609; *Burns v. Campbell,* 71 Ala. 271; *Diversy v. Johnson,* 93 Ill. 547; *Turfts v. Latshaw,* 72 S. W. 679; 104 U. S. 54; Pom. Eq. sec. 1076; Story's Eq. sec. 468; *Lehman-Durr v. Kelly,* 68 Ala. 192; *Baer v. M. C. B. Mfg. Co.,* 159 Ala. 504.

McCLELLAN, J.—When the main cause was before this court on former appeal, its general nature and object were there stated: "The bill is exhibited by a distributee of the estate of a deceased member of a copartnership, against the surviving partner, who is also the administrator of the estate of the intestate, and prays the removal of the estate for administration from the probate into the chancery court of Mobile county, the removal of the administrator for causes averred, and for an accounting in the premises by the surviving partner in respects of his acts and doings in performance of the trust involved in the winding up of the dissolved (by death) copartnership, and also that injunctive process issue to conserve the interests of all parties in the assets of the concern, and that a receiver be appointed to take charge of such assets." Another incidental phase of the litigation is shown in *Ex parte Dickens,* 162 Ala.

272, 50 South. 218; and still another in *Dickens v. Dickens, Infra,* 56 South. 806. The respondent Charles C. Dickens' answer in the main cause was made a cross-bill, whereby he sought an accounting of the affairs of the English Manufacturing Company from its organization, alleged an indebtedness of James O. Dickens to the copartnerishp above his (James O. Dickens') interest therein, and prayed other action consistent with the winding up and settlement of the concern. On the main appeal seven errors are assigned. That numbered 5 is expressly waived in brief for appellant.

The first assignment is as follows: "Because the court erred in ascertaining and decreeing that the respondent is indebted to complainant.—Record, p. 1494."

The second assignment is as follows: "Because the court erred in decreeing that the respondent is largely indebted to the complainant.—Record, p. 1494."

Were it at this time important, it might, under our practice (Rule 1, S. C. Prac., Civil Code 1907, p. 1506), be at least questioned whether these assignments are not too general and indefinite to present any particular matter for review.—*Feagan v. Kendall,* 43 Ala. 628, 631; *Alexander v. Rea,* 50 Ala. 450; *Morris v. Poillon,* 50 Ala. 403; *Robinson v. Murphy,* 69 Ala. 543; *Craig v. Pierson Co.,* 169 Ala. 548, 53 South. 803. We do not find it necessary to determine the matter at this time.

The record paging in these assignments refers to the last decree rendered by the chancellor, on May 14, 1910. By way of premise, in this decree, it is recited, to state the substance, that by previous decree the report of the special master, Mr. Clarke, had been confirmed. In this report the special master ascertained the indebtedness of the respondent. The decree to which that of May 14, 1910, made reference was the decree of May 11, 1910, which overruled the exceptions of respondent to the

special master's report and confirmed it in all respects. In the decree of May 14, 1910, the net indebtedness, upon the basis of the aggregate indebtedness found by the special master, was adjudged in favor of complainant. In the decree of September 30, 1909, wherein the relations of the respondent to the copartnership, the English Manufacturing Company, and to the estate of James O. Dickens, deceased, were found and declared, a reference to the special master was ordered to state the accounts in the premises. In this decree the chancellor adjudged that James O. Dickens and Charles C. Dickens, constituting the English Manufacturing Company, had made on the 1st day of June, 1903, the last of a number of settlements of the partnership, "at which time (June 1, 1903) the status of the partnership matters were fully agreed upon between Charles C. Dickens and James O. Dickens, and it was fully agreed between them that James O. Dickens was entitled to an undivided two-thirds interest in the partnership assets then on hand, and that Charles C. Dickens was entitled to a one-third undivided interest therein." The adjudication in the decree of September 30, 1909, with respect to the settlement of June 1, 1903, was invited by a plea, filed April 15, 1908, by Carrie McGill Dickens, to Charles C. Dickens' cross-bill, wherein he sought an accounting of the partnership affairs from its creation in 1885. The report of the appeal will contain this plea, as also the decree of September 30, 1909. Other assignments of error, as we understand them, question the correctness of the chancellor's ruling, in the particular that the accounting, consistent with the theory of the plea of April 15, 1908, was restricted to a period beginning June 1, 1903. The assignments raising, in substance, this question, are those numbered 3, 4 and 6. Neither of the assignments numbered 1 and 2 raise the question of the

propriety of the court's action in overruling the respondent's exceptions (assuming, for the occasion only, that the paper purporting to present exceptions of respondent to the report of the special master was serviceable to that end.—Rule 93, Ch. Court Prac., Civil Code 1907, p. 1556; *McGuire v. Appling,* 157 Ala. 309, 47 South, 700) to the report of the special master in the particular indicated.

Waiving, for the present, the consideration resulting from the *finality* (in the sense of supporting an appeal) of the decree of September 30, 1909, it is evident that the question of the correctness of the *amount* of the indebtedness ascertained should have been raised by assignments of error addressed to the decree overruling exceptions to the report of the special master and confirming that report, viz., the decree of May 11, 1910. There is no such assignment by appellant.

The decree of September 30, 1909, determined the equities between the parties. In that aspect it was a *final* decree. In the aspect that an accounting and reference to the special master was ordered, it was interlocutory.—*Adams v. Sayre,* 76 Ala. 509; *Garry & Welpin et al. v. Jenkins et al.,* 109 Ala. 471, 20 South. 8; *Hunt v. Stockton Lumber Co.,* 113 Ala. 387; 399 21 South. 454; *Foley et al. v. Leva et al.,* 101 Ala. 395, 13 South. 747; *Wynn, Adm'r. v. Tallapoosa County Bank,* 168 Ala. 469, 480-482, 53 South. 228. From the *final* decree of September 30, 1909, wherein the equities of the parties were fully adjudged, no appeal was taken by the appellant within the time prescribed by law.—Code, § 2868, and amendatory acts (Acts Sp. Sess. 1909, p. 165). So, the matters concluded by that decree cannot be now reviewed.—*Foley v. Leva,* 101 Ala. 395, 13 South. 747; *Kimbrell v. Rogers,* 90 Ala. 339, 7 South. 241, and authorities therein cited.

23—174

Among other matters determined in that final decree, and particularly, because of the pleadings, comprehended in the submission for that *final* decree, was the basis, in point of time of beginning, of the accounting so referred to the special master. The direction, in this regard, to the special master but gave effect to the adjudication whereby that date was fixed as the beginning point of the accounting. The special master had no power to alter it, or to take note of any matters, relating to the partnership, back of June 1, 1903. To have reviewed the adjudication that the settlement, by consent, of June 1, 1903, concluded the partners to that date, an appeal from that adjudication was essential. It was a judgment, by the chancellor, upon a matter touching the fundamental rights of the parties—the merits of the cause—and not an adjudication merely determinative of the elements, the items, of the account to be taken. No appeal having been taken from the decree of September 30, 1909, within the period required by law, errors cannot now be assigned or considered; for to so allow would violate the limitation fixed by law. Hence assignments 3, 4, and 6 are vain and do not invite the review they intend.

For practically similar reason assignment numbered 7 cannot be considered. It would invoke review of the decree of May 9, 1908, wherein the plea of April 15, 1908, was adjudged sufficient. No appeal from this decree was taken. If it be assumed that review of the decree of May 9, 1908, might have been invoked on appeal from the *final decree* of September 30, 1909, it is evident that the omission to appeal, within the limitation, from the decree of September 30, 1909, foreclosed review of the decree of May 9, 1908.

In the brief for appellant filed on submission of the appeal, no reference to assignment numbered 8 was

made.  It was waived by the ommission to insist upon it.—*L. & N. R. R. Co. v. Holland,* 173 Ala. 675, 55 South. 1001, 1008, 1009.  The insistence (if so) upon it in brief *subsequently* filed for appellant did not retract the waiver thus made.—*L. & N. R. R. Co. v. Holland, supra.* The assignment cannot be considered.

The ninth assignment would question the action of the chancellor in declining to allow the respondent "to amend his answer by filing in lieu thereof the amended answer and cross-bill" of September 3, 1909.  This action of the court was taken (according to the amended— nuc pro tunc—record of the cause) on September 3, 1909.  No appeal having been prosecuted by appellant till January 5, 1911, and that from the decree of May 14, 1910, only, the ninth assignment cannot be considered.  An appeal from the *final* decree of September 30, 1909, would have to be served to justify the assignment of this matter as error.  Such an appeal was not taken within the limitation prescribed by law.

No reversible error being shown by appellant, the decree appealed from must be affirmed.

## Cross-Appeal.

The basis of the two assignments of error pressed by the cross-appellant is to be found in the declination of the special master to charge the surviving partner with $41,684.88; the special master finding as of fact that, without authority, he continued the business and to the extent of the sum stated invested the funds of the firm in goods which went into and were commingled with the assets of the firm, and that the business, though unauthorized, was carried on at a profit up to the time the receiver assumed charge thereof.  The chancellor overruled exceptions of the complainant to this feature of the special master's report and confirmed the report.

It is earnestly insisted, upon these assignments of error, that there was nor is any ground other than assumption upon which to rest the conclusion "that these goods were commingled with the trust, and that the complainant in some way got the benefit thereof." After the decree of September 30, 1909, designating the special master to take and state the account directed thereby, the complainant filed with the special master on October 29, 1909, an account against the surviving partner. With this account the complainant filed with the special master an extended "explanation" thereof. In it occur these statements: "In making up the first analysis referred to, which is contained in Book 1, however, the complainant's accountant did not examine the data with a view of ascertaining which of the expenditures of said Charles C. Dickens were, in fact, made in payment of goods purchased by him since the death of his deceased partner; but the accountant has since that time made up a list showing the disbursements included in this account which were, in fact, made in payment of the goods purchased by Charles C. Dickens since the death of his deceased partner. This analysis is contained in Book 9, which is filed herewith, pages 11, 12, and 13, showing that $41,674.88 of these disbursements were in fact made in payment for goods purchased by Charles C. Dickens since the death of his deceased partner. In connection with these expenditures, the complainant calls the special master's attention to the fact that, after the death of James O. Dickens, Charles C. Dickens wrongfully continued to conduct the business of the English Manufacturing Company as if it was his own, and bought new goods and mixed them with the goods on hand and sold from the common stock thus mixed, and kept no account whatever showing what portion of his receipts and disbursements related to the winding-

up of the copartnership, and what portion thereof related to the new business thus conducted by him."

In the account headed "Statement of Account of C. C. Dickens," filed by cross-appellant with the special master, along with the explanations mentioned, there appears this statement: "Amount paid by C. C. Dickens out of firm assets for purchases made by him, and part of freight on the same from Nov. 30/08 (the date of J. O. Dickens' death) to Jan'y 29/09_____41,674.88." Evidently the date, "Nov. 30/08," was intended to read, "Nov. 30/06"; that being "the date of J. O. Dickens' death."

If we interpret the quoted statements, in connection with the other parts of the explanation filed by cross-complainant, aright, the stated insistence cannot be approved. The special master, and the chancellor in confirming his report, were well invited to decide that this sum out of the trust fund went into new goods, and that these goods were commingled with other partnership assets.

There in no contest of the abstract, soundness of the legal proposition that, "on the dissolution of the firm by the death of one of the partners, it is the survivor's duty to settle up the partnership affairs within a reasonable time, and pay over to the representatives of the deceased partner the amount due to them; and if he takes the responsibility of continuing the business of the firm, and using the property of the partnership, he becomes liable for losses that may occur; and it is the option of the representatives of the deceased partner either to insist upon a division of the profits, which may be made in thus carrying on the business or upon being paid the amount of the deceased's share in the capital, with lawful interest thereon, after deducting his indebtedness to the firm."—*Clay v. Field,* 138 U. S. 464, 473, 474, 11

Sup. Ct. 419; 34 L. Ed. 1044; 30 Cyc. p. 640, and notes; *Brown's Appeal,* 89 Pa. 139, 147; 2 Lindley on Part. (4th Ed.) star pages 977-979, and notes thereon. But it is insisted by cross-appellant that the rule that "when goods are intermixed willfully, without mutual consent, the entire property belongs to him whose property was originally invaded, and its distinctive character destroyed" (*Alley v. Adams,* 44 Ala. 609; *Burns v. Campbell,* 71 Ala. 271), should be applied, to the end that the surviving partner would be charged with the sum stated.

The result of the application of this rule to the status created by the unauthorized continuance of the business by the surviving partner would be to give the cross-appellant the proportionate benefit of *both* the trust fund invested in new goods and the purchases therewith made. When translated into the form of an account, the surviving partner would be charged with the trust fund and with the goods into which it went, and denied credit of the sum so expended by him. Such was, as we understand it, the special master's notion, and that approved by the chancellor, when in his report he said: "I hold that she (complainant cross-appellant) would not have the right to recover of respondent her share of the capital used, with interest thereon, and in addition thereto take two-thirds of the goods in which said capital was invested, with the profits made from the sales of the same. Upon broad equitable principles, apart from the rule establishing the surviving partner's liability, this should not be allowed."

According to the account, and accompanying explanation, filed with the special master by the complainant (cross-appellant), the purchases made by the surviving partner, after the dissolution of the partnership by death, were made with trust funds, thereby excluding, as to the sum in question, any basis upon which to ap-

ply the doctrine with respect to the "commingling of goods." The goods purchased with trust funds. took the place of funds in the trust. They did not represent, nor were they individual property of the surviving partner. Hence there was no *commingling* of separately owned properties or funds, but only, as the special master ruled, "a change from a moneyed asset into a property asset."

The assignments made upon the cross-appeal are without merit; and, upon that appeal, the decree is affirmed.

Affirmed on both the main and cross-appeals. All the Justices concur.