(92 South. 805)

**BROCK et al. v. CLIO BANKING CO.**
(4 Div. 933.)

(Supreme Court of Alabama. Feb. 11, 1922. Rehearing Denied April 27, 1922.)

1. **Appeal and error** ⟋1201(2)—**No amendment of bill after final decree.**

Where, in an action for an accounting under several mortgages, and to purge the account of usury, and to enjoin foreclosure of the mortgages, the accounting involving several mortgages beginning with those given in 1908, on final decree of the appellate court, finding issues on alleged errors prior to a settlement of January, 1910, in favor of defendants, a motion by complainant to amend the bill to show payments made prior to the settlement of January, 1910, was properly disallowed.

2. **Appeal and error** ⟋1201(2)—**Decree of circuit court, though reversed in part, rendered in part, and affirmed in part by appellate court, was final decree.**

Notwithstanding that a decree of the circuit court was reversed in part, decree rendered therein contrary to it in part, and affirmed in part by the appellate court, the decree of the appellate court, combined with the affirmed part of the decree of the circuit court, was still a final decree for purpose of determining propriety of amendment of pleading on remand.

3. **Appeal and error** ⟋1201(2)—**After final decree, no amendment to bill allowed as a matter of right.**

In view of Code 1907, § 3126, providing that amendments to bills must be allowed at any time before the final decree, and Gen. Acts 1915, p. 705, approved September 22, 1915, § 1, providing that amendments to bills in equity may be filed as a matter of right at any time before final decree, after a final decree of the appellate court reversing in part, affirming in part, and rendering in part a decree of the circuit court, no amendment to the bill of complaint need be allowed as a matter of right.

Appeal from Circuit Court, Barbour County; J. S. Williams, Judge.

Bill by C. J. Brock and another against the Clio Banking Company to enjoin the foreclosure of mortgage, to purge it of usury, and to redeem. From the decree rendered, complainants appeal. Affirmed.

See, also, 204 Ala. 57, 85 South. 297.

H. L. Martin, of Ozark, and J. J. Mayfield, of Montgomery, for appellants.

The court erred in not permitting the amendment to be filed that was offered to be filed in July, 1920. 50 Ala. 561; 64 Ala. 486; 186 Ala. 574, 64 South. 960. The effect of reversing the decree on former appeal was to vacate it in toto, and to leave the parties just as if it had not been rendered. 20 Ala. 373; 173 Ala. 272, 55 South. 1011; 18 Ala. 405; 22 Ala. 425; 90 Ala. 252, 7 South. 805; 199 Ala. 594, 75 South. 6; 96 Ala. 534, 11 South. 600; 104 Ala. 92, 15 South. 939. The court erred in not going back of the settlement of January, 1910, and permitting the claimants to show the payment by mistake of more than $4,000. 88 Ala. 309, 7 South. 150; 59 Ala. 264; 119 Ala. 534, 24 South. 561; 84 Ala. 4, 7 South. 98; 12 Ala. App. 596, 68 South. 556; 88 Ala. 300, 7 South. 150; 75 Ala. 572.

George W. Peach, of Clayton, and McDowell & McDowell, of Eufaula, for appellee.

The report of the former appeals in this case concludes complainant from going back of the settlement of January, 1910, and hence the court properly denied the right to make the amendment, ordered in July, 1920. And on these same authorities counsel contend that the decree is in all respects correct and should be maintained.

MILLER, J. This bill was filed by C. J. and J. P. Brock against the Clio Banking Company for an accounting under several mortgages given by complainants to the defendant, to purge the account of usury, and to enjoin foreclosure of the mortgages. The accounting and purging of usury involved several mortgages, beginning with those given in 1908. The cause was submitted for final decree. The court on February 19, 1919, decreed "that the complainants are entitled to the relief sought in their bill." This decree names all of the mortgages and says:

"All usury contained in each of said notes and mortgages should be expunged and interest on all of the same disallowed."

The decree also says:

"That the register, in ascertaining the present indebtedness due from complainants to respondents, begin with the papers executed to the Clio Banking Company on September 26, 1908, and that he ascertain what amounts have been paid by complainants on all papers, those payable to respondent as well as those payable to Planters' & Merchants' Bank, to Mrs. Laura Kirkland, and to J. E. Z. Riley, to secure any of the indebtedness involved in this controversy, and that he allow no interest whatsoever on any of said papers, and that he apply as payments on only the principal sum all amounts which may have been paid, whether paid as interest or otherwise; in other words, it is ordered, adjudged, and decreed that the register in his calculations allow no interest whatsoever on any of the papers involved in this controversy, and that he apply as payment on

the principal sum such amounts of money as may have been paid by the complainants on any of the mortgages which are mentioned, those to respondent, to Planters' & Merchants' Bank, to Mrs. Laura Kirkland, to J. E. Z. Riley, and to J. T. Jackson, respectively."

There was an appeal from this decree of February 19, 1919, to this court. It is reported in 204 Ala. 57, 85 South. 297 (Clio Banking Co. v. Brock). A part of the opinion of this court in this case reads as follows:

"As stated by counsel for appellant in brief, the decisive question to be determined on this appeal is whether the settlement made by the parties on January 31, 1910, was a bona fide settlement by which complainants' indebtedness to respondent and respondent's interest therein were completely extinguished by complainants' payment of the balance then agreed upon as due, or whether, on the other hand, that settlement was simulated and colorable merely, by reason of some collusive understanding between respondent and the Planters' & Merchants' Bank of Ozark, J. E. Z. Riley, and Mrs. Laura Kirkland, who successively loaned the money to complainants upon ostensibly new mortgage securities, but for and at the instance of respondent, in order to purge respondent's demand of its usurious elements—respondent remaining all the while the real creditor and beneficiary of the mortgage securities—so that the final transaction of February 3, 1916, by which complainants executed to respondent the last mortgage in suit, covering their previous indebtedness since January 31, 1910, and also the sum of $4,000 borrowed by them in 1914 to pay off Mrs. Kirkland's mortgage, was in effect as to that $4,000 but a renewal of the original usurious debt of January 31, 1910.

"This is the theory of the bill, and, if satisfactorily established by the evidence, it would require the elimination from the present mortgage indebtedness of all items of usury, even those prior to the settlement of January, 1910. The law of such cases was clearly stated and applied in the recent case of Blue v. First National Bank, 200 Ala. 129, 75 South. 577. But in that case it was said that 'if there had been a bona fide novation—a new debt created payable at a legal rate of interest to Scott [the alleged and proven dummy] for his use and benefit—and the novated debt had been transferred to the bank [the original creditor], the plea of usury could avail appellant nothing.'

"The burden of proof is here upon complainants to show to our reasonable satisfaction that their successive transactions with the Ozark bank, with Riley, and with Mrs. Kirkland were not in fact bona fide novations, but were in legal effect renewals of their original indebtedness to the respondent bank. It may be conceded that, in the absence of clear explanations and denials on the part of respondent and the several mortgagees named, complainants' contention would be sufficiently supported to warrant the relief prayed for. But our examination of the evidence, especially the testimony of all the parties concerned, leads us to a contrary conclusion. We shall not indulge in a discussion of the testimony further than to say that we are convinced that complainants'

transactions with the Ozark bank, with Riley, and with Mrs. Kirkland were bona fide novations, in which respondent was not concerned, and that respondent's loan of $4,000 to complainants in 1914, to pay off the Kirkland mortgage, did not operate as a renewal of the indebtedness of January, 1910, so as to open that indebtedness for usurious impeachment now.

"Respondent concedes that there is usury in its account with complainants since January, 1910, and the decree of the circuit court will be reversed, and the cause remanded for a reference to the register, for an accounting to ascertain the amount legally due to respondent, based upon transactions since the settlement of January, 1910."

[1] After this cause was reversed, the complainants made application on July 12, 1920, to amend the bill of complaint, and they aver in the proposed amendment that complainants paid $926.98 to the defendant in 1908, for which they received no credit, and that large sums were charged them by defendant in 1909, which they did not receive, that on account of these errors in debits and credits complainants by mistake improperly paid defendant $4,878.14 in January, 1910, and they seek now by this amendment to reopen that settlement and to recover for said items, with interest, in the accounting prayed for in the bill and in this amendment. This amendment, on motion of defendant, was stricken from the file and not allowed. There are many reasons why this was not error.

The original bill as amended September 26, 1917, sets forth these same alleged errors in debits and credits in the settlement of January, 1910, as are set out and claimed in this proposed amendment. They were clearly and directly in issue by the bill as amended September 26, 1917, and in the answer filed to it October 11, 1917. The amended bill and the answer both referred to each item, and the correctness of each item was in issue, and the pleadings averred and the proof showed a full bona fide settlement on those transactions was made between the parties in January, 1910.

The circuit court by its decree under the issues directed the register to ascertain the amount legally due respondents, based on transactions beginning with papers executed September 26, 1908, to the Clio Banking Company, and to purge them of usury. This court, in 204 Ala. 57, 85 South. 297, on former appeal, found the facts under the issues contrary to the circuit court in part, and directed that the register "ascertain the amount legally due to respondents, based on transactions since the settlement of January, 1910," and to purge them of usury. Thus this court found the issues on the alleged errors prior to and in the settlement of January, 1910, against the complainants and in favor of defendant. That evidence is before us now, and its weight clearly sustains

the finding of this court, as indicated by that opinion.

The application to amend the bill was made July 12, 1920, 11 or 12 years after the alleged errors or mistakes were made. The original bill was filed on September 9, 1916, more than 6 years after the alleged errors were committed. The bill was amended September 26, 1917, putting in issue these same claimed errors or mistakes. Under the amended bill, answer, and proof, this court decided the issue against complainants, and the weight of the evidence sustains the opinion of the court. This decree of the circuit court rendered in this cause on February 19, 1919, is a final decree. Hunt v. Stockton Lbr. Co., 113 Ala. 387, 21 South. 454, headnotes 1 and 2; Dickens v. Dickens, 174 Ala. 345, 56 South. 809.

[2] The legal effect of this opinion and decree of this court in 204 Ala. 57, 85 South. 297, in this case, is to reverse the decree of the circuit court in part, to render a decree therein contrary to it in part, to affirm in part that decree, and to give directions for the reference, contrary to it in part and in accord with it in part. That decree of this court (204 Ala. 57, 85 South. 297), combined with the affirmed part of the decree of February 19, 1919, of the circuit court, was still a final decree in this cause. Hunt v. Stockton Lbr. Co., 113 Ala. 387, 21 South. 454, headnotes 1 and 2.

[3] This court fixed the time by that opinion for the beginning of the accounting referred to the register. It ordered a reference for an accounting to ascertain the amount legally due respondent, based upon transactions since the settlement of January, 1910. Under the pleadings that was one of the questions at issue. The decree on it by this court was final. It was a judgment on some of the rights of the parties, touching some of the real merits of the cause, and these rights were included in the issues in the pleading. The register could not change it. The court below had no power to alter it. At the hearing on the reference the transaction between the parties at and prior to the settlement made in January, 1910, by them, were properly excluded. Dickens v. Dickens, 174 Ala. 345, 56 South. 809; Hunt v. Stockton Lbr. Co., 113 Ala. 387, 21 South. 454; Clio Banking Co. v. Brock, 204 Ala. 57, 85 South. 297. After a final decree of this kind, no amendment to the bill of complaint must be allowed as a matter of right. This application to amend this bill of complaint after this final decree came too late. Section 3126, Code 1907; Hunt v. Stockton Lbr. Co., 113 Ala. 387, 21 South. 454; Truss v. Miller, 116 Ala. 494, 22 South. 863; Wilkinson v. Buster, 115 Ala. 578, 22 South. 34.

"Amendments to bills must be allowed at any time before final decree, by striking out or adding new parties, or to meet any state of evidence which will authorize relief." Section 3126, Code 1907.

"Amendments to bills in equity may be filed as a matter of right at any time before final decree, by striking out, or adding new parties, or to meet any state of evidence which will authorize relief." Section 1, Act Sept. 22, 1915 (Gen. Acts 1915, p. 705); Hunt v. Stockton Lbr. Co., 113 Ala. 387, 21 South. 454; Truss v. Miller, 116 Ala. 494, 22 South. 863.

The register held the reference correctly as to the admission and rejection of evidence, and as to ascertaining the amount legally due respondent by complainants, as directed by the opinion and decree of this court in 204 Ala. 57, 85 South. 297, and that part of the decree of the circuit court affirmed by this court. His rulings followed the opinion of this court. The register reported in part as follows:

"Upon the consideration of this cause, the register proceeds to ascertain and charge the complainants with all amounts received by them since the transactions of January, 1910, without charging any interest; the amounts taken being the net amounts received by the complainants, as shown by the testimony on file, and crediting the complainants with all amounts paid by them to respondents as shown by the testimony on file.

"Now, therefore, I, the register of this court, beg leave to report that since the settlement of January, 1910, the total debits amount to $20,959.75, and the total credits amount to $14,787.48, leaving a balance of $6,172.27, and 15 per cent. on the same for respondent's attorneys is $925.84, making the total amount legally due by the complainants $7,098.11, and so I ascertain, find, and report that said sum of $7,098.11 is due by the complainants after all interest is eliminated. And I hereby attach hereto every item of debits and every item of credits as ascertained by me to be true and correct, and mark the same 'Exhibit A.'

"All of which is respectfully submitted.

"Done this October 7, 1920.

"B. F. Petty, Register."

Attached to the report is an itemized statement of the account between the parties, giving the date and amount of each debit and credit found correct by the register from the evidence, and which was allowed by him. There were exceptions filed by the complainants to many items of this account in the report of the register. These exceptions were overruled, and the report of the register was in all respects confirmed by the circuit court. After a careful examination of the account, the documentary evidence, and the testimony of the witnesses, we find the testimony on the items in dispute in conflict, and we are convinced that the different findings of fact by the register from this conflicting evidence are correct, and the circuit court did not err in overruling complainants' exceptions to them and in confirming the report. An analysis of and reference to the evidence, which leads us

to concur in the conclusion of the register and the trial judge, is not necessary to be written in this opinion. It would serve no good purpose to do so.

Finding no error in the record, the decree is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.